WILLIAM Q. MacLEAN, JR. *vs.* STATE BOARD OF RETIREMENT
& another.[1]

Suffolk. May 2, 2000. - August 18, 2000.

Present: MARSHALL, C.J., ABRAMS, GREANEY, IRELAND, & SPINA, JJ.

*Public Employment,* Retirement, Forfeiture of pension. *Statute,* Construction.
*Constitutional Law,* Retirement, Contract clause, Excessive fines clause,
Double jeopardy.

The terms of a former State employee's settlement agreement with the At-
torney General regarding a criminal prosecution for violations of the
conflict of interest law, G. L. c. 268A, § 7, did not operate to bar applica-
tion of the pension forfeiture statute, G. L. c. 32, § 15 (4), where the
language of the agreement did not waive pension forfeiture and where, in
any event, the Attorney General did not have the authority to waive the ap-
plication of the General Laws. [342-343]

A former State employee's claim that the pension forfeiture provisions of
G. L. c. 32, § 15 (4), were not triggered by his conviction after guilty
pleas to two violations of the conflict of interest law because his sentence
was only probation was waived, where the argument was raised for the
first time on appeal; in any event, there was no merit to the claim.
[343-344]

The addition of G. L. c. 32, § 15 (4), inserted by St. 1987, c. 697, § 47, did
not substantially alter the terms and conditions of a former State
employee's expected pension benefits such as would violate the contract
clause of the United States Constitution, where the employee was properly
on notice when he entered government service in 1959 that his pension
benefits could be revoked if he engaged in certain criminal activities.
[344-345]

A former State employee did not demonstrate that his forfeiture of ap-
proximately $625,000 in pension and retirement benefits pursuant to G. L.
c. 32, § 15 (4), following his conviction for violations of the conflict of
interest law, was an "excessive fine" prohibited by the Eighth Amendment
to the United States Constitution, where the forfeiture was roughly
equivalent to the *minimum improper gains,* already disgorged, involved in
the case, and where the violations involved multiple illegal activities over
a period of time by a highly placed public official that implicated the
public trust and involved public harm. [345-350]

The revocation of pension benefits under G. L. c. 32, § 15 (4), is not criminal
punishment for double jeopardy purposes, where the revocation is a civil

[1] New Bedford Division of the District Court Department of the Trial Court,
as a nominal party.

proceeding serving nonpunitive as well as deterrent purposes and is not a "separate proceeding" such as would lead to double jeopardy, and where forfeiture flows as an automatic legal consequence of conviction of certain offenses. [350-352]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on August 9, 1999.

The case was reported by *Abrams*, J.

*Philip N. Beauregard* (*William H. Carey* with him) for the plaintiff.

*Peter Sacks*, Assistant Attorney General, for State Board of Retirement.

IRELAND, J. This is an action brought by the plaintiff, William Q. MacLean, Jr., in the nature of certiorari under G. L. c. 249, § 4, to review a decision of the District Court upholding a decision of the State Board of Retirement (board). A single justice of this court reserved and reported the case without decision to the full court pursuant to Mass. R. Civ. P. 64 (a), as amended, 423 Mass. 1403 (1996). After the plaintiff pleaded guilty to two violations of the conflict of interest law, G. L. c. 268A, § 7, the board ordered that his pension be forfeited as provided by G. L. c. 32, § 15 (4), and the District Court upheld the board's decision. The plaintiff challenges this ruling, arguing that the language of his settlement agreement with the Attorney General precluded the forfeiture and that his guilty plea was not a "final conviction" that would trigger the pension forfeiture statute. He also contends that the pension forfeiture statute is unconstitutional as applied to him, specifically arguing that the statute violates the contract clause to the United States Constitution, amounts to an excessive fine, and constitutes double jeopardy.[2] We reject the plaintiff's statutory and constitutional challenges to the pension forfeiture statute and accordingly remand the case to the county court for the entry of a judgment affirming the decision of the District Court.

---

[2] Many of the plaintiff's arguments seem to question generally the wisdom of pension forfeiture statutes, contending that it would be more logical to deter official corruption through increased criminal fines for certain offenses. See Jacobs, Pension Forfeiture: A Problematic Sanction for Public Corruption, 35 Am. Crim. L. Rev. 57, 91-92 (1997). The plaintiff also points to the fact that the pension forfeiture statute is not calibrated to the gravity of an offense. These arguments, however, as they focus on the merits of differing policy choices, are better addressed to the Legislature.

1. *Background.* The plaintiff began government employment when he joined the Fairhaven police department as a reserve officer in 1959. Two years later, in 1961, the plaintiff was elected to the General Court, where he was a member until January 5, 1993.[3] During this period, the plaintiff contributed five per cent of his regular compensation to the State retirement system. The plaintiff took superannuation retirement pursuant to G. L. c. 32, § 5, on January 5, 1993. At the time of his retirement, the plaintiff's contributions amounted to $36,730.04, and the interest on these contributions was $37,911.67, a total of $74,641.71. In January, 1993, the plaintiff began receiving monthly payments of approximately $1,916.73. The District Court estimated the total value of the pension to be approximately $400,000, plus retirement benefits.

On February 2, 1993, the plaintiff was indicted for two misdemeanor violations of G. L. c. 268A, § 7, the Massachusetts conflict of interest statute. Ironically, one of these violations arose from the plaintiff's involvement with the marketing of pension plans, life insurance, and other retirement investments to government employees.[4] After the plaintiff pleaded guilty to the charges, he was sentenced to one year of probation, conditioned on the payment of $512,000 to the Commonwealth to settle a connected civil suit.[5] The plaintiff's settlement with the Attorney General released him "from any and all other administrative, civil or criminal claims and charges arising under G. L. c. 268A or c. 268B."

On March 25, 1993, approximately six weeks later, the board notified the plaintiff of its intention to review whether his pension should be forfeited under G. L. c. 32, § 15 (4), which provides:

> "In no event shall any member [of the State retirement system] after final conviction of a criminal offense involving violation of the laws applicable to his office or position, be entitled to receive a retirement allowance under

[3]The plaintiff served as a State Representative from 1961 to 1980 and as a State Senator from 1980 to January 5, 1993.

[4]This first violation occurred continuously from January, 1982, through May 31, 1989. The other violation, which involved a publicly financed housing development's payment of fees to the plaintiff's wife, occurred continuously from January, 1982, through December 31, 1990.

[5]The civil lawsuit sought a disgorgement of the profits that the plaintiff and his wife had earned in the activities that violated G. L. c. 268A, § 7.

the provisions of section one to twenty-eight, inclusive, nor shall any beneficiary be entitled to receive any benefits under such provisions on account of such member. The said member or his beneficiary shall receive, unless otherwise prohibited by law, a return of his accumulated total deductions; provided, however, that the rate of regular interest for the purpose of calculating accumulated total deductions shall be zero."

After a limited hearing, the board issued a decision ordering that the plaintiff's retirement allowance be terminated pursuant to the statute. The board ordered the return to the plaintiff of his contributions, less interest and less the amount of retirement allowance he had already received from his date of conviction. The board stated that it lacked the jurisdiction to consider the plaintiff's constitutional claims. The plaintiff then sought review in the District Court, which, after reviewing the applicable statutory and constitutional provisions, ruled that the board's actions were justified.

2. *Statutory and common-law arguments.* (a) *Settlement agreement with the Attorney General.* The plaintiff first argues that the settlement agreement with the Attorney General releases him from the application of the pension forfeiture statute. We do not accept this argument, however, for two reasons.

As G. L. c. 32, § 15 (4), is mandatory and occurs by operation of law, the Attorney General did not have the authority to release the plaintiff from the forfeiture statute. Although the Attorney General may bind State administrative agencies in litigation, see *Secretary of Admin. & Fin.* v. *Attorney Gen.*, 367 Mass. 154, 162-163 (1975), the Attorney General does not have the power to waive the application of the General Laws, and, in particular, G. L. c. 32, § 15 (4). "Officers of governmental agencies have authority to bind their governmental bodies only to the extent conferred by the controlling statute." *Boston* v. *Back Bay Cultural Ass'n*, 418 Mass. 175, 184 (1994), quoting *White Constr. Co.* v. *Commonwealth*, 11 Mass. App. Ct. 640, 647 (1981), *S.C.*, 385 Mass. 1002 (1982) (municipality's agreement to waive application of statute void). See *Daley* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds*, 406 Mass. 857, 860 (1990) (agreement with prosecutor waiving statutorily required period of license suspension unenforceable). Therefore, the settlement agreement did not preclude the revocation of the plaintiff's retirement benefits.

In addition, the language of the agreement did not waive pension forfeiture. The language of the agreement released the plaintiff from "other . . . claims and charges arising under G. L. c. 268A." We conclude that the forfeiture did not "arise under" G. L. c. 268A. Although G. L. c. 268A provided the law governing the predicate convictions, the pension forfeiture "arose under" G. L. c. 32, § 15 (4). Further, pension forfeiture under G. L. c. 32, § 15 (4), is an automatic legal consequence of conviction of certain offenses. Therefore, forfeiture is not a different "charge," but rather a result of the criminal charges to which the plaintiff pleaded guilty.[6]

(b) *Final conviction.* The plaintiff argues that the pension forfeiture statute was not triggered because, as he only received probation as a result of his guilty pleas, he was not "finally convicted" within the meaning of G. L. c. 32, § 15 (4). This argument was raised neither at the board hearing nor at the District Court, and thus was waived. See *Albert* v. *Municipal Court for the City of Boston,* 388 Mass. 491, 493-494 (1983) (party cannot raise arguments on appeal that could have been raised before administrative agency but were not).

In any event, the plaintiff's argument is meritless. Relying on *Commonwealth* v. *Stewart,* 422 Mass. 385, 387 (1996), the plaintiff argues that, because probation for a misdemeanor is "not a sentence" for purposes of the witness impeachment

---

[6]In support of his contention that the settlement agreement with the Attorney General waived the application of G. L. c. 32, § 15 (4), the plaintiff points to the fact that pension forfeiture was never mentioned during his plea colloquy. During a plea colloquy, a judge must inform a defendant, on the record, that, by pleading guilty, the defendant is waiving the constitutional right to a trial, to confront one's accusers, and the privilege against self-incrimination for the purpose of ascertaining that the guilty plea is made intelligently and voluntarily. See *Boykin* v. *Alabama,* 395 U.S. 238, 243 (1969); *Commonwealth* v. *Lewis,* 399 Mass. 761, 764 (1987). By statute, the Legislature has required additional warnings to be given. See, e.g., G. L. c. 278, § 29D (immigration status warning); *Commonwealth* v. *Soto,* 431 Mass. 340, 342 (2000) (same). There is, however, no such statutory warning regarding the suspension of retirement benefits. There are many potential collateral consequences of pleading guilty to various crimes, such as sentence enhancement in Federal court, see *Commonwealth* v. *Lopez,* 426 Mass. 657, 663 (1998), suspension of a driver's license, see *Rushworth* v. *Registrar of Motor Vehicles,* 413 Mass. 265, 273-274 (1992), and reduced possibilities for employment in certain fields. However, a judge is not required to detail all such probable or potential consequences in a plea colloquy, only those required by statute or case law. Discussion of these potential consequences are more properly left to trial counsel.

statute, G. L. c. 233, § 21, and he was given probation, there is no "final conviction" that would trigger the pension forfeiture statute. However, in *Commonwealth* v. *Stewart, supra,* we noted the defendant's conviction when he was sentenced to probation, even though he had not been "sentenced" for purposes of the witness impeachment statute. The Legislature could have specified "imprisonment" as the triggering event for pension forfeiture, but it did not.

3. *Constitutional arguments.* (a) *Contract clause.* The plaintiff argues that the addition of G. L. c. 32, § 15 (4), inserted by St. 1987, c. 697, § 47, substantially altered the terms and conditions of his pension benefits from the time when he began State employment.[7] Therefore, the plaintiff claims that the application of § 15 (4) to him violates the contract clause of the United States Constitution. A statute violates the contract clause if there is an enforceable contract that is "substantially impaired," *Massachusetts Community College Council* v. *Commonwealth,* 420 Mass. 126, 131 (1995), and then only if the statute is not "reasonable and necessary to serve an important public purpose." *United States Trust Co.* v. *New Jersey,* 431 U.S. 1, 25 (1977). See *Energy Reserves Group, Inc.* v. *Kansas Power & Light Co.,* 459 U.S. 400, 411 (1983); *Massachusetts Community College Council* v. *Commonwealth, supra* at 131-133.

First, we conclude that there is an "enforceable contract" at issue in this case, albeit the type of "relaxed" contract that arises in the context of pension benefit plans. See G. L. c. 32, § 25 (2); *Opinion of the Justices,* 364 Mass. 847, 861-862 (1973) (rejecting argument that State pension is a "gratuity" or merely form of government largesse, and instead stating: " 'Contract' . . . should be understood [in the pension benefits context] in a special, somewhat relaxed sense. . . . When, therefore, the characterization 'contract' is used, it is best understood as meaning that the retirement scheme has generated material expectations on the part of employees and those expectations should in substance be respected"); *Colo* v. *Contributory Retirement Appeal Bd.,* 37 Mass. App. Ct. 185, 188-189 (1994).

Second, in order to determine whether the passage of § 15 (4) "substantially impaired" the contract, it is necessary to

---

[7]Section 15 (4) applies only to crimes committed on or after its effective date, January 12, 1988. See St. 1987, c. 697, §§ 47, 135. Both of the plaintiff's violations continued past this effective date. See note 4, *supra.*

examine the plaintiff's "core of . . . reasonable expectations," informed by the content of the pension statute when the plaintiff began his service in the Legislature. *Id.* at 189, quoting *Opinion of the Justices, supra* at 862. When the plaintiff took office there were a number of pension forfeiture provisions already in effect. These provisions barred payment of certain portions of retirement allowances if a member was removed from office for "moral turpitude," misappropriated funds or property of a governmental unit, or was discharged for violation of laws applicable to his position.[8] These provisions were the precursors to § 15 (4), and put the plaintiff properly on notice when he entered government service that his pension benefits could be revoked if he engaged in certain criminal activities. See *Essex County Retirement Bd.* v. *Contributory Retirement Appeal Bd.*, 342 Mass. 322, 324-325 (1961) (barring public official convicted of bribery from collecting retirement allowance). The fact that § 15 (4) applies in slightly different situations from these precursors is not determinative. State pension benefits have been, and are, the subject of a great deal of regulation, and it therefore would have been unreasonable for an employee to think that the list of events triggering forfeiture was immutable.[9] See *Energy Reserves Group, Inc.* v. *Kansas Power & Light Co.*, *supra* at 411. Ultimately, the addition of § 15 (4) did not work a "substantial impairment" of the plaintiff's contract.

(b) *Excessive fine.* The plaintiff further argues that the revocation of his pension benefits is an "excessive fine" prohibited by the Eighth Amendment to the United States Constitution. The excessive fines clause "limits the government's power to extract payments . . .'as punishment for some offense.' " *United States* v. *Bajakajian*, 524 U.S. 321, 328 (1998), quoting *Austin* v. *United States*, 509 U.S. 602, 609-610 (1993). The clause thus

---

[8]Specifically, G. L. c. 32, § 10 (1) and 10 (2) (*a*), barred payment of either a superannuation or termination allowance to a member removed from office for "moral turpitude." General Laws c. 32, § 15 (1) and 15 (3), provided that a member found by the board to have been, or convicted of, misappropriating funds or property from a governmental unit would forfeit pension benefits until restitution had been made. Finally, G. L. c. 32, § 10 (2) (*c*), provided that a member removed or discharged for violation of the laws applicable to his position forfeited his termination retirement allowance.

[9]Further, the plaintiff was a member of the Legislature when it enacted these changes in the law. Although the record does not indicate whether the plaintiff voted on this issue, it is not unreasonable to assume that he was either aware of, or should have been aware of, these changes in the law.

requires us to consider first, whether there was an extraction of payments, second, whether any extraction was punitive, and third, whether any punitive extraction was excessive. See *id.*

The pension forfeiture at issue here does not violate the Eighth Amendment because, even assuming, without deciding, that the forfeiture was a "fine," and that it was punitive, the amount was not excessive.[10] While appropriate punishment is left to the Legislature in the first instance, a forfeiture can be excessive "if it is grossly disproportional to the gravity of a defendant's offense." *United States* v. *Bajakajian, supra* at 334. As the United States Supreme Court has stated, "the touchstone of the . . . inquiry . . . is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish. . . ." *Id.* See *United States* v. *Bieri,* 68 F.3d 232, 236 (8th Cir. 1995), cert. denied, 517 U.S. 1223 (1996), quoting *United States* v. *Alexander,* 32 F.3d 1231, 1237 (8th Cir. 1994) (to violate Eighth Amendment, forfeiture must reach "such a level of excessiveness that in justice the punishment is more criminal than the crime").

In *United States* v. *Bajakajian, supra,* the United States Supreme Court articulated several factors to determine whether a forfeiture is grossly disproportional to an offense. These factors include the gravity of the offense, the maximum penalties, whether the violation was related to any other illegal activities, and the harm resulting from the crime. See *United States* v. *Bajakajian, supra* at 338-340. See also *United States* v. *Ahmad,* 213 F.3d 805, 813 (4th Cir. 2000) (relevant factors include "nature and extent of the criminal activity, its relation to other crimes, its penalties, and the harm it caused"); *Towers* v. *Chicago,* 173 F.3d 619, 625 (7th Cir. 1999) (factors include gravity of offense and harm caused). The *Bajakajian* case involved a violation of 31 U.S.C. § 5316(a)(1)(A), which imposes a reporting requirement when more than $10,000 in cash is taken out of the United States. As the *Bajakajian* Court made clear, the failure to report was an isolated offense that was

---

[10]As a result, we need not decide whether a pension forfeiture in a dollar amount approximating the prosecution or investigatory costs to the Commonwealth, plus any necessary restitution of amounts misappropriated or pilfered from the State, might properly be considered "restitutional," and therefore not punitive; and whether amounts in excess of that would properly be categorized as punishment.

unrelated to any other illegal activity. *Id.* at 338. Further, the Court concluded that the harm was "minimal"; there was "no fraud on the United States," and no harm to the public. See *id.* at 339. The only harm from the crime was that the government would "have been deprived . . . of the information" that the cash had been taken out of the country. *Id.* In light of the minimal harm, relatively light fine under the sentencing guidelines, and isolated nature of the crime, the Court held that a forfeiture of the $357,144 in cash, that was the subject of the failure to report, would violate the Eighth Amendment.

We also note that the plaintiff has the burden of proving that a forfeiture violates the Eighth Amendment. See *United States v. Ahmad, supra* at 816; *United States v. Alexander, supra* at 1235-1236; *United States v. Sarbello*, 985 F.2d 716, 724-725 (3d Cir. 1993). See also *United States v. Bucuvalas*, 970 F.2d 937, 946 (1st Cir. 1992), cert. denied, 507 U.S. 959 (1993). MacLean has not met that burden. Applying the *Bajakajian* principles to this case, we conclude that the revocation of pension benefits does not constitute an excessive fine.

In his initial 1993 submission to the board, the plaintiff claimed that the pension forfeiture "would constitute an extreme additional penalty." In the District Court he expressly raised an excessive fines claim, asserting that:

> "At the time that the Retirement Board revoked Mac-Lean's pension, the benefits that he and his wife could derive from membership in the retirement system were valued at over $700,000. Together with MacLean's payment of $512,000 to the Commonwealth as part of his plea, the financial penalty imposed on MacLean exceeded $1 million for misdemeanor offenses that carry a maximum aggregate fine of $6,000."

In his findings and rulings of law, based on mortality tables, the District Court judge determined that the plaintiff's life expectancy "would have yielded a total pension amount of in excess of $400,000, plus health insurance benefits." The judge made no finding as to the value of the latter. The plaintiff submitted an actuarial estimate valuing the health insurance benefits at $225,855. We accept for purposes our of discussion here the judge's finding that the total pension amount forfeited by the plaintiff was at least $400,000 and, in the absence of a finding by the judge or challenge by the Commonwealth, that

the value of the health insurance benefits was $225,855, as the plaintiff estimated, resulting in a forfeiture that had a total value of approximately $625,000.[11]

i. *Gravity of offense; maximum penalties possible.* The plaintiff argues that the forfeited amount is excessive for misdemeanor violations of G. L. c. 268A, § 7, that carry a maximum aggregate fine of $6,000. But violations of G. L. c. 268A, § 7, also carry a maximum statutory penalty of two years' imprisonment in addition to the fine, indicating that the Legislature considered violations of this provision a serious offense. *Id.* Cf. *United States* v. *Busher*, 817 F.2d 1409, 1415 n.10 (9th Cir. 1987) (in considering harshness of penalty, court must consider total punishment imposed, including not only forfeiture, but any incarceration, fines, or probation).

In an affidavit apparently filed by the plaintiff before the board he states that "the full amount of the economic advantage [he] gained in violation of G. L. c. 268A, § 7," amounted to $512,000. There appears to be no contrary indication from the Commonwealth, although the terms of the settlement agreement suggest that a portion of this amount may have been paid in connection with only one of the two schemes identified with the unlawful activity.[12] In any event, $512,000 is a significant amount of improper gain in violation of our law, further suggesting a serious offense here and a serious harm. Notably, the value of the forfeiture ($625,000) is roughly equivalent to the minimum improper gains involved in this case.

---

[11] In any forfeiture case it would be helpful for the judge to make a finding of the total value of the forfeiture involved.

[12] On the record before us it is difficult to tell what portion of this $512,000 was restitutional and, conversely, whether full restitution has been made. The settlement agreement states that of the $512,000, only $278,090 will go to the Commonwealth deferred compensation program "as compensation and disgorgement of any indirect economic advantage that Senator MacLean obtained *from Pilgrim [Insurance Agency, Inc.,]* in violation of G. L. c. 268A, Section 7" (emphasis added). Although the settlement agreement is a complete release, precluding the Commonwealth from claiming further restitutional amounts from MacLean, the settlement terms do not make clear whether there was full disgorgement and restitution for *both* schemes that involved indirect financial interests, and that no part of the subsequent pension forfeiture is properly considered restitutional, for additional improper gain or for repayment of the Commonwealth's investigation and prosecution costs. However, even interpreting the facts in the light most favorable to the plaintiff — to assume that the entire pension benefits forfeiture of approximately $625,000 is not restitutional, but rather punitive — we still conclude that the forfeiture was not grossly disproportional to the offense in this case.

We recognize, of course, that the plaintiff was also compelled to disgorge the improperly gained $512,000, and that the pension forfeiture may amount to a penalty beyond any disgorgement of improper earnings. Yet, we need not decide that here. Disgorgement merely places the plaintiff in the position he would have been in without the conduct that violated the statute. There is little deterrence in simple disgorgement of ill-gotten gain on being caught. Deterrence requires more, a penalty that places the violator in a position *worse* than he would have occupied before his violation.

If the improper gains achievable in violation of the statute far exceed any penalty that may be imposed, the penalty will have little deterrent value. The calculus of potential illegal gain would far outweigh the risk of potential loss. In contrast, a penalty matching or exceeding any improper gain has greater deterrent value, and may be necessary and proper to enforce the law. A penalty, as here, approximating the value of the improper gain does not strike us as excessive in this case. See *Commonwealth v. Novak,* 272 Mass. 113, 114-115 (1930) (nothing unconstitutional in statutory provision that defendant shall forfeit double the value of money won in illegal gaming); *United States v. Bieri,* 68 F.3d 232, 237 (8th Cir. 1995) (forfeiture of farm worth $245,000 would not be excessive where illegal drugs distributed from or kept at farm were valued at $233,750). This is not a case of a small infraction worth less than a few thousand dollars triggering hundreds of thousands of dollars in pension benefits forfeiture. See *United States v. Bajakajian, supra* at 339-340.

ii. *Relation to other illegal activities; harm caused.* The plaintiff acknowledged that he pleaded guilty to two indictments charging violations of G. L. c. 268A, § 7, "charg[ing] that [he] had a prohibited indirect financial interest in two state contracts of which [he] *'had reason to know'* " (emphasis in original). One indictment involved the plaintiff's alleged indirect financial interest in a contract involving the Massachusetts Housing Finance Agency and the other involved alleged indirect financial interest in a contract involving the Commonwealth. There were multiple illegal activities triggering the forfeiture, not a single minor violation, and the offenses occurred over a period of time. Cf. *United States v. Bajakajian, supra* at 325, 337-338 (single violation unrelated to any other illegal activities). See also *United States v. Alexander,* 32 F.3d 1231, 1236-1237 (8th Cir. 1994) (duration of criminal activities a factor). Because

they concerned indirect financial interest in State contracts, involving a highly placed member of government, the violations implicated the public trust and involved public harm. Cf. *United States* v. *Bajakajian, supra* at 339 (harm caused was only to government and that was minor, depriving government only of information).

Comparing the large amount of illegal gain, $512,000,[13] to the amount of the pension benefits, $625,855, the forfeiture is not grossly disproportional to the plaintiff's offense. See *United States* v. *Ahmad, supra* at 817; *United States* v. *Bieri, supra* at 236-237 (forfeiture of farm valued at $245,000 not disproportional in comparison to value of illegal drugs kept on property, $233,750); *United States* v. *Lippert*, 148 F.3d 974 (8th Cir. 1998) (civil penalty of $352,823.60, which was twice the amount of the illegal kickbacks received, upheld from Eighth Amendment challenge although criminal fine was $5,000).

(c) *Double jeopardy.* The plaintiff argues that, because he was given one year of probation and required to pay $512,000 when he pleaded guilty, the subsequent revocation of his pension benefits subjected him to double jeopardy.[14] Among other abuses, the double jeopardy clause prevents multiple punishments for the same offense. See *North Carolina* v. *Pearce*, 395 U.S. 711, 717 (1969). In order to demonstrate that he has been subjected to multiple punishments, the plaintiff must demonstrate that the application of G. L. c. 32, § 15 (4), constituted criminal punishment; that the "same offense" is at issue; and that there were "separate proceedings." See *Hudson* v. *United States*, 522 U.S. 93, 99 (1997); *Department of Revenue of Montana* v. *Kurth*

---

[13]The plaintiff argues that the maximum fine for these two violations of G. L. c. 268A, § 7, is $6,000, and thus the pension forfeiture is grossly disproportional. However, the more proper frame of reference incorporates not only the statutory fine, but also the amount of profit the plaintiff received in violation of State law and the fact that these violations of G. L. c. 268A, § 7, also could have resulted in a two-year sentence.

[14]The Fifth Amendment to the United States Constitution states: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." The double jeopardy clause was made applicable to the States through the due process clause of the Fourteenth Amendment to the United States Constitution. See *Benton* v. *Maryland*, 395 U.S. 784, 794 (1969). Although the Massachusetts Constitution has no counterpart to the double jeopardy clause, we have long recognized a protection against double jeopardy that is coextensive with Federal protection. See *Opinion of the Justices*, 423 Mass. 1201, 1218 n.13 (1996).

*Ranch,* 511 U.S. 767, 778 (1994); *Luk* v. *Commonwealth,* 421 Mass. 415, 419 (1995).

The plaintiff first contends that G. L. c. 32, § 15 (4), is criminal punishment because he claims it "serves no purpose other than to punish [him] by depriving him of the benefits of participation in the retirement system."[15] Applying the relevant factors described in *Hudson* v. *United States, supra* at 99-100, such as the Legislature's denomination of the sanction as civil, whether the sanction imposes an "affirmative disability or restraint," and whether there is an alternative purpose for the sanction other than the traditional aims of punishment, we conclude that the revocation of pension benefits contemplated by § 15 (4) is not "criminal punishment" for double jeopardy purposes. First, the pension benefits are revoked by the board in a civil proceeding. Although § 15 (4) certainly contains an element of deterrence, it also serves other, nonpunitive purposes, such as protection of the public fisc and preserving respect for government service. Our decision is consistent with those of other jurisdictions, which have ruled that their pension forfeiture statutes are civil in nature. See, e.g., *LePrince* v. *Trustees, Teachers' Pension & Annuity Fund,* 267 N.J. Super. 270, 276-277 (App. Div. 1993), cert. denied, 510 U.S. 1119 (1994) (pension forfeiture is civil in nature); *Retirement Bd. of the Employees' Retirement Sys. of R.I. & Cranston* v. *Azar,* 721 A.2d 872, 879 (R.I. 1998), cert. denied, 526 U.S. 1116 (1999) (same).

In any event, the plaintiff's double jeopardy argument fails because there were not "separate proceedings" that would lead to double jeopardy. Under § 15 (4), forfeiture of pension benefits automatically flows as a consequence of conviction. The statute does not allow the board any discretion as to the

---

[15]We recognize that in the past we have not said whether the provisions of § 15 are criminal or civil. See *Doherty* v. *Retirement Bd. of Medford,* 425 Mass. 130, 137 (1997) (holding that, despite term "forfeiture" in § 15 [1], it was "not so punitive"); *Gaffney* v. *Contributory Retirement Appeal Bd.,* 423 Mass. 1, 3 n.3 (1996) (commenting that statute is penal only for purposes of statutory construction and noting that § 15 [4] causes "loss of only future benefit payments and accumulated interest"); *Collatos* v. *Boston Retirement Bd.,* 396 Mass. 684, 686-687 (1986) (stating § 15 [3A] is penal for purposes of statutory construction and implying that statute constitutes "punishment").

revocation of pension benefits.[16] We discussed a similar statutory scheme in *Rushworth* v. *Registrar of Motor Vehicles*, 413 Mass. 265, 273-274 (1992). There, we upheld a law, challenged on double jeopardy grounds, that required an automatic license suspension whenever a driver was convicted of a drug offense. As we explained, the fact that the Legislature mandated an automatic license suspension meant that one of the principal dangers of double jeopardy, that the government would be dissatisfied with the result of a particular prosecution and would attempt to prosecute again, was not present. See *id.* ("Once the Legislature has specifically authorized two punishments, double jeopardy principles are not implicated, and the direction of the Legislature is to be enforced").

In both *Doherty* v. *Retirement Bd. of Medford*, 425 Mass. 130 (1997), and *Gaffney* v. *Contributory Retirement Appeal Bd.*, 423 Mass. 1 (1996), the provisions of G. L. c. 32, § 15, were challenged on other grounds, and we upheld the pension forfeiture statute as constitutional. The plaintiff has likewise failed to demonstrate any common-law, statutory, or constitutional infirmity. The case is remanded to the county court where a judgment is to be entered affirming the judgment of the District Court.

*So ordered.*

---

[16]The fact that here the board held a limited hearing does not mean that there was a "separate proceeding" for double jeopardy purposes. The hearing only gave the plaintiff the opportunity to dispute the fact of his convictions (which he did not do), and to allow him to make constitutional arguments (which he did, but which the board stated that it did not have the jurisdiction to consider).