Graham, J.
The plaintiff, Gerald W. Clemente (“Clemente”), brought this action against Thomas F. Reilly (“Reilly”)[2] as Attorney General of the Commonwealth and Former First Assistant District Attorney for Middlesex County, and the Department of the Attorney General (“Attorney General’s Office”),[3] alleging that Reilly breached a Nonprosecution Cooperation/Immunity Agreement (“Agreement”) under which Clemente pled guilty to one count of racketeering in exchange for government immunity from further prosecution. Clemente claims that the Attorney General’s Office breached the Agreement when it issued an opinion to the Board of State Retirement (“the Board”) concerning the termination of Clemente’s pension benefits pursuant to G.L.c. 32, §15(3), for his racketeering conviction. In this action, Clemente seeks declaratory judgment concerning the parties’ rights and obligations under the Agreement, and alleges breach of contract, promissory estoppel, detrimental reliance, loss of consortium and conflict of interest. All of Clemente’s claims hinge upon whether Reilly breached the Agreement. Reilly now moves for judgment on the pleadings, or, alternatively, for summary judgment, on the grounds that he has no authority to release Clemente from the application of G.L.c. 32, §15(3), since the statute is automatic upon conviction and after a hearing, and because the terms of the Agreement and the statute do not provide for waiving the application of G.L.c. 32, §15(3), to Clemente.
BACKGROUND
From May 17, 1959 to December 28, 1963, Clemente served as a police officer in the City of Medford. From January 17, 1964 to May 28, 1983, Clemente served as a police officer for the Metropolitan District Commission Police Department (“MDC”). On May 28, 1983, the Board granted Clemente a disability retirement allowance pension under G.L.c. 32, §94, as a result of his service with both departments.
Shortly after his retirement, Clemente was indicted on charges of conspiracy and violations of the Racketeer Influenced and Corrupt Organizations Act (“RICO”), 18 U.S.C. §§1961-68 (1994), arising out of the “Exam Scam” scheme in which Clemente and other police officers stole and sold advance copies of police entrance and promotional examinations along with the answers to law enforcement applicants.[4]
On or about April 28, 1986, Clemente, the United States Attorney for the District of Massachusetts, the Attorney General of Massachusetts and the District Attorney for Middlesex County entered into an immunfiy agreement.[5] The Agreement provided that in exchange for Clemente agreeing to plead guilty to one count of violating the RICO statute and agreeing to cooperate fully with the government against other “Exam Scam” participants, the prosecuting authorities promised to make certain recommendations to the Federal Court on Clemente’s behalf.[6] Further, Section B(4) of the Agreement provided that
[n]o information disclosed by Mr. Clemente during the course of his cooperation will be used directly or indirectly against him in any criminal prosecution in this district provided his statements and testimony are truthful and he complies with all the conditions of the agreement. If Mr. Clemente is called by these offices as a witness at any criminal trial, these offices will obtain an appropriate judicial grant of immunity.
Section B(5) of the Agreement provided that ‘ je]xcept as provided below, these offices further agree not to prosecute Mr. Clemente for any violations of federal, state, or local laws occurring in Massachusetts about which he has provided or will provide information pursuant to this agreement.”
On or about October 20, 1988, the Board sought an opinion from the Attorney General regarding the effect of Clemente’s guilty plea on his retirement benefits. Approximately twenty (20) months later, the Attorney General’s Office rendered a formal “A.G. Opinion” to the Board concerning the termination of Clemente’s pension benefits. A month later, the Board terminated Clemente’s pension benefits. On or about January 5, 1995, the Board filed a Certificate of Finding and Decision concluding that Clemente had misappropriated funds of the MDC within the meaning of G.L.c. 32, §15(3), and, consequently, ordered the termination of Clemente’s membership in the retirement system pursuant to G.L.c. 32, §15(1), and that Clemente forfeit all rights to any retirement allowance and the return of his accumulated total deductions pursuant to G.L.c. 32, §§1-28.
*578 DISCUSSION
This Court grants judgment on the pleadings pursuant to Mass.R.Civ.P. 12(c) when all the pleadings are closed and granting the motion will not delay the trial. Mass.R.Civ.P. 12(c). The rule provides that “[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . .” Id. Because the parties have filed all the pleadings and the Court has considered matters outside the pleadings, this Court treats Reilly’s motion as one for summary judgment.
Summary judgment is appropriate where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 713-14 (1991). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The Court decides any conflicts in the materials and all logical permissible inferences in favor of the non-moving party. See Wilitts v. Roman Catholic Archbishop of Boston, 411 Mass. 202, 203 (1991).
(A) Release from Pension Forfeiture Statute
As part of an extensive and complex bill to establish a single contributory retirement law for public employees, the Legislature enacted G.L.c. 32, §15(3), in 1945. See Acts and Resolves of 1945, Chapter 659. Section 15(3) provides that
[i]n no event shall any member after final conviction of an offense involving the funds or property of a governmental unit or system referred to in subdivision (1) of this section, be entitled to receive a retirement allowance or a return of his accumulated total deductions under the provisions of sections one to twenty-eight inclusive, nor shall any beneficiary be entitled to receive any benefits under such provisions on account of such member, unless and until full restitution for any such misappropriation has been made.
G.L.c. 32, §15(3).
Reilly first argues that summary judgment is appropriate because he has no authority to release Clemente from the application of the automatic pension forfeiture statute, G.L.c. 32, §15(3), regardless of the terms of the Agreement. The Supreme Judicial Court recently addressed this issue. In MacLean v. State Bd. of Ret., 432 Mass. 339 (2000), a former police officer and member of the General Court pled guilly to two misdemeanor violations under G.L.c. 268A, §7, known as the Massachusetts conflict of interest statute. See id. at 341. As part of his plea agreement, MacLean signed a release with the Attorney General “from any and all other administrative, civil or criminal claims and charges arising under G.L.c. 268A or c. 268B.” Id. Subsequently, the Retirement Board notified MacLean it was reviewing whether to forfeit his pension benefits under G.L.c. 32, §15(4). See id. The Supreme Judicial Court rejected MacLean’s argument that the settlement agreement released him from the application of the pension forfeiture statute, and ruled that because
G.L.c. 32, §15(4), is mandatory and occurs by operation of law, the Attorney General did not have the authority to release [MacLean] from the forfeiture statute. Although the Attorney General may bind State administrative agencies in litigation, . . . the Attorney General does not have the power to waive the application of the General Laws, and, in particular, G.L.c. 32, §15(4). Officers of governmental agencies have authorily to bind their governmental bodies only to the extent conferred by the controlling statute . . . Therefore, the settlement agreement did not preclude the revocation of [MacLean’s] retirement benefits.
Id. at 342.
The same reasoning applies to this matter. Although in MacLean, G.L.c. 32, §15(4), concerned the forfeiture of pension benefits as a result of misconduct and here, G.L.c. 32, §15(3), concerns forfeiture of pension rights upon conviction, both establish “consequences relating to pensions for public employees based upon dereliction of duty.” DeLeire v. Contributory Ret. Appeal Bd., 34 Mass.App.Ct. 1, 6, (1993). like G.L.c. 32, §15(4), the consequences under G.L.c. 32, §15(3), are mandatoiy and occur by operation of law. General Law c. 32, §15(3), gives the Board no discretion in revoking pension benefits. See id. at 351-52. The Board’s sole responsibility under G.L.c. 32, §15(1), is to determine at a hearing, after a charge has been made against a member, whether the charges are true, and if true, which section of G.L.c. 32, §15, is applicable. See G.L.c. 32, § 15(1). Therefore, the determination by the Board that Clemente’s racketeering charge and conviction were founded, automatically triggered the forfeiture of his pension benefits under G.L.c. 32, §15(3). See G.L.c. 32, §15(3); cf. MacLean v. State Bd. of Ret., 432 Mass. at 342, 351. Accordingly, Reilly lacked the authority to release Clemente from the provisions of G.L.c. 32, §15(3), even if the language in the Agreement purports to do so. See Sec’y of Admin. & Fin. v. Attorney Gen., 367 Mass. 154, 162-63 (1975).
(B) Waiver from Pension Forfeiture Statute
Reilly also contends that he is entitled to summary judgment because the terms of the Agreement do not waive the application of G.L.c. 32, § 15(3), to Clemente. Because the pension forfeiture statute, G.L.c. 32, §15(3), imposes the civil penalty of pension forfeiture, its enforcement does not constitute a criminal prosecution barred by Section B(4) of the Agreement, which relates only to the criminal prosecution of Clemente for information disclosed by him. See MacLean v. State Bd. of Ret., 432 Mass. at 351. Moreover, Clemente *579 cannot assert that he has been prosecuted by Reüly since it was the Board, and not Reilly who terminated Clemente’s benefits. He therefore cannot assert a viable claim that Reilly has violated Section B(5) of the Agreement. Since neither section of the Agreement is triggered, the application of G.L.c. 32, §15(3), is not waived. Accordingly, Clemente’s benefit forfeiture cannot be avoided or prevented by Reilly or any other government member or agency.
ORDER
For the foregoing reasons, the defendant’s motion for summary judgment on all counts is hereby ALLOWED.

Clemente filed the original complaint against the Commonwealth of Massachusetts’ State Board of Retirement. Clemente’s amended complaint naming Reilly as defendant eliminates the need to discuss Reilly’s res judicata argument.

Clemente filed three previous suits seeking reinstatement of his pension benefits. In 1993, Clemente filed a Federal civil rights action in the United States District Court for the District of Massachusetts pursuant to 42 U.S.C. §1983. In 1995, Clemente filed the second lawsuit in Plymouth District Court pursuant to G.L.c. 30A seeking judicial review of the Retirement Board’s decision to terminate Clemente’s pension benefits as a result of his Exam Scam activities. In 1999, Clemente filed the third lawsuit in this Court seeking declaratory relief. Clemente voluntarily withdrew the third lawsuit. One year later, in August of 2001, Clemente unsuccessfully attempted to resurrect the case. (Haggerty, J.). This action is the fourth action concerning Clemente’s pension benefits.

Clemente played a central role in the scheme. In the Federal case, evidence showed that Clemente and another MDC police officer named Thomas K. Doherty orchestrated and implemented a plan in which the two stole advance copies of police examinations from the offices of the Massachusetts Department of Personal Administration (“MDPA’j. Over the course of seven years, Clemente stole and distributed advance copies of over twenty police promotional examinations. Clemente and Doherty sold each examination for $3,000.00, which they split between themselves.

Reilly was the First As sist ant District Attorney at the time the Agreement was signed.

Section B(l) of the Agreement provides that “the United States Attorney for the District of Massachusetts intends to recommend a twenty-year sentence on the RICO charge to which Mr. Clemente will plead guilty.” The United States Attorney recommended that the RICO charge run concurrently with Clemente’s State sentence arising from a 1980 burglary of the Depositors Trust Bank.