612                           67 Mass. App. Ct. 612 (2006)

Maher *v.* Justices of the Quincy Division of the District Court Department.

RALPH MAHER *vs.* JUSTICES OF THE QUINCY DIVISION OF THE
DISTRICT COURT DEPARTMENT & another.[1]

No. 05-P-1785.

Norfolk. September 14, 2006. - October 27, 2006.

Present: DOERFER, KAFKER, & MILLS, JJ.

*Public Employment,* Retirement benefits, Forfeiture of pension. *Municipal Corporations,* Retirement board, Pensions. *Pension. Administrative Law,* Exhaustion of remedies. *Jurisdiction,* Constitutional question. *Constitutional Law,* Excessive fines clause.

A city's retirement board properly required the plaintiff to forfeit his retirement allowance pursuant to G. L. c. 32, § 15(4), where there were multiple, direct links between the criminal offenses of which the plaintiff was convicted and his office or position, and where there was substantial evidence to support the board's findings. [616-617]

There was no merit to the argument that a member of a city's retirement board was required to recuse himself from a hearing on the forfeiture of the plaintiff's retirement allowance on the ground of avoiding at least the appearance of bias, where the alleged bias was speculative, and the prospect of any such bias influencing the decision-making of the other board members was implausible. [617]

This court remanded for further proceedings a claim that forfeiture of the plaintiff's retirement allowance pursuant to G. L. c. 32, § 15(4), constituted an excessive fine in violation of the Eighth Amendment to the United States Constitution, where the plaintiff's failure to raise the issue at a hearing before a city's retirement board could not result in the closure of the record and the waiver of the constitutional claim, in that the resolution of the claim was ultimately and undeniably a core judicial function outside the jurisdiction and special expertise of the board and separate and apart from the issues the board needed to resolve. [617-621]

CIVIL ACTION commenced in the Superior Court Department on August 27, 2004.

The case was heard by *Barbara A. Dortch-Okara,* J., on a motion for judgment on the pleadings.

*Frank J. McGee* for the plaintiff.

[1]Retirement board of Quincy.

*Michael Sacco* for retirement board of Quincy.

*Jonathan C. Green & Monica E. Conyngham*, for city of Quincy, amicus curiae, submitted a brief.

KAFKER, J. The first question we must decide is whether the retirement board of Quincy (board) properly required the plaintiff, Ralph Maher, to forfeit his retirement allowance pursuant to G. L. c. 32, § 15(4), which provides that no member of a public employee retirement system shall be entitled to a retirement allowance after conviction of a criminal offense involving violation of the laws applicable to his office or position. If the board correctly interpreted G. L. c. 32, § 15(4), the second question we must decide is whether the plaintiff waived his challenge based on the Eighth Amendment to the United States Constitution, that the forfeiture constituted an excessive fine, by failing to raise this constitutional claim before the board.

*Background.* On December 15, 2001, while the plaintiff was employed as the chief plumbing and gas inspector for the city of Quincy (city), he and another city employee broke into and entered the personnel office at city hall. There, the plaintiff reviewed his personnel file and stole a document or documents from the file. A few weeks later, a new mayor took office. On January 16, 2002, the plaintiff took superannuation retirement. On July 24, 2003, the plaintiff entered pleas of guilty on indictments charging him with violations of G. L. c. 266, § 18 (breaking and entering in the daytime with intent to commit a felony); G. L. c. 266, § 127 (wanton destruction of property, a door to the personnel office); and G. L. c. 266, § 20 (stealing personnel records and various documents). The plaintiff was sentenced to concurrent terms of six months unsupervised probation on each conviction and was ordered to make restitution of $393 and to pay a fine of $500.

After the plaintiff had pleaded guilty to the offenses related to the break-in at city hall, the city initiated proceedings against the plaintiff pursuant to G. L. c. 32, § 15(2) and (4), to determine whether the plaintiff's convictions "involv[ed] violation of the laws applicable to his office or position" and would therefore require forfeiture of his retirement allowance. The board held a hearing, at which the evidence presented included the defendant's guilty pleas and the change of plea colloquy

614                                    67 Mass. App. Ct. 612 (2006)

Maher v. Justices of the Quincy Division of the District Court Department.

from the Superior Court. During the colloquy, the plaintiff had admitted that he "stole personnel records and documents, the property of the City of Quincy, from the Office of the Personnel Director."[2] The former personnel director also had testified that after conducting "a thorough search of his office, the only missing property was one of two personnel folders kept on [the plaintiff]."

At the hearing before the board, the plaintiff's counsel argued that unless the board could prove what was taken from the plaintiff's personnel file, it could not find that the criminal offenses were a violation of the laws applicable to the plaintiff's office or position. Although it rejected this contention, the board placed the plaintiff under oath and asked him to clarify for the board what was taken from his file. He refused, and the board found it reasonable to infer from his refusal to testify that his testimony would have been against his interest.[3] Based on all the evidence, the board further determined that "[g]iven that Mayor Sheets had recently been defeated in the City of Quincy mayoral election, and [the plaintiff's] appointment as Chief Plumbing and Gas Inspector would rest in the hands of the new mayor, it is reasonable for this Board to conclude that Maher broke into the Office of the City of Quincy's Personnel Director for the sole purpose of removing unflattering and/or critical documents from his personnel file which could compromise his reappointment by the new mayor."[4]

The board concluded that there was "clearly . . . a link

---

[2]His counsel also confirmed that the plaintiff took a portion of his personnel file. Counsel further elaborated that the plaintiff went to city hall with the intention of looking at his personnel file "and if . . . certain things were in there that he believed were inappropriate, taking them." Although not referenced in the board's decision, counsel at the plea hearing stated further that the plaintiff was looking for letters prepared by the plaintiff's superior that were highly critical of the plaintiff and accused him of numerous improprieties.

[3]The plaintiff also contended that the board could have determined what was in his personnel file by contacting the United States Attorney's office. Prior to December 15, 2001, the United States Attorney's office had subpoenaed the plaintiff's personnel file. The board requested the city solicitor to contact the United States Attorney's office, but he reported back that he was "unable to obtain a complete copy of the personnel file as it existed prior to the December 15, 2001 break in."

[4]The board additionally found that the plaintiff sought to cover up the

between [the plaintiff's] official duties and his criminal convictions." Had the plaintiff "broke[n] into a private residence . . . it is likely that his retirement allowance would not be revoked; however, in this case, but for the fact that he was the Chief Plumbing and Gas Inspector for the City of Quincy, he would not have had cause to break into the Personnel Director's office, and steal his personnel file." The board held that both the larceny and the breaking and entering convictions were violations of the laws applicable to the plaintiff's office or position, thereby requiring forfeiture of the plaintiff's retirement allowance.

Thereafter the plaintiff sought judicial review in the District Court pursuant to G. L. c. 32, § 16(3), where, after hearing, a District Court judge found the board's decision justified, including the forfeiture of the plaintiff's pension, and dismissed the petition.[5] The plaintiff then commenced an action in the nature of certiorari in the Superior Court.[6] A Superior Court judge allowed the board's motion for judgment on the pleadings, ruling that (1) the plaintiff's convictions were for criminal offenses "involving violation of the laws applicable to his office or position" under G. L. c. 32, § 15(4); (2) there was no error in the refusal of board member Francis X. McCauley, a former mayor of the city, to recuse himself from participating in the forfeiture hearing; (3) the court need not reach the plaintiff's claim that forfeiture of his pension constitutes a violation of the Eighth Amendment to the United States Constitution, as that claim was not raised before the board and not considered by the District Court and thus was waived; and (4) there was no error in the

---

break-in by having a locksmith who routinely performed service for the city repair the broken door.

[5]The judge did, however, exclude all consideration of the testimony regarding the locksmith, who was not subject to cross-examination. We do the same.

[6]General Laws c. 249, § 4, as amended by St. 1973, c. 1114, § 289, provides, in pertinent part, that "[a] civil action in the nature of certiorari to correct errors in proceedings which are not according to the course of the common law, which proceedings are not otherwise reviewable by motion or by appeal, may be brought in the supreme judicial or superior court . . . ." See *Doherty* v. *Retirement Bd. of Medford*, 425 Mass. 130, 134 (1997) (a case following the same procedural path as this one, from the retirement board to the District Court pursuant to G. L. c. 32, § 16[3][a], to the Superior Court pursuant to G. L. c. 249, § 4).

introduction before the board of a copy of the city police depart-
ment file relating to the investigation into the break-in that
resulted in the plaintiff's indictments, despite the hearsay it
included, as there was substantial evidence to support the
board's decision in any event.[7] The plaintiff has appealed, press-
ing each of the foregoing issues.

*Discussion.* As provided in G. L. c. 32, § 15(4), as inserted
by St. 1987, c. 697, § 47, "[i]n no event shall any member [of
the retirement system] after final conviction of a criminal of-
fense involving violation of the laws applicable to his office or
position, be entitled to receive a retirement allowance . . . ."
Upon such conviction, § 15(4) further provides that the member
"shall receive, unless otherwise prohibited by law, a return of
his accumulated total [contributions to the retirement system];
provided, however, that the rate of regular interest for the
purpose of calculating accumulated total [contributions] shall be
zero."

The Supreme Judicial Court has stated that "[t]he substantive
touchstone intended by the General Court is criminal activity
connected with the office or position." *Gaffney* v. *Contributory
Retirement Appeal Bd.*, 423 Mass. 1, 4 (1996). See *State Bd. of
Retirement* v. *Bulger*, 446 Mass. 169, 174-175 (2006). This does
not mean that the crime itself must reference public employ-
ment or the employee's particular position or responsibilities.
*Gaffney* v. *Contributory Retirement Appeal Bd.*, *supra* at 3-4.
Rather, it means that the violations must be "related to the
member's official capacity." *Id.* at 5. We therefore "[l]ook[] to
the facts of each case for a direct link between the criminal of-
fense and the member's office or position." *Ibid.*

There are multiple, direct links between the criminal offenses
here and the plaintiff's office or position. He broke and entered
into the city's personnel office. He stole documents from his
personnel file. His object was to remove documents criticizing
his performance as the chief inspector of gas and plumbing to
improve his chances of being reappointed by a recently-elected

[7]The plaintiff raised the same issues with similar briefing in both the
District and Superior Courts. With the exception of the Eighth Amendment
argument, these issues were also raised before the board.

mayor.[8] There was also substantial evidence to support all the board's findings given the plaintiff's guilty pleas, the statements made during the plea colloquy, the testimony provided by former city personnel director Kevin Madden, the timing of the break-in shortly before a new mayor would take office, and the reasonable inferences that could be drawn from the plaintiff's refusal to testify at the board hearing. See *Doherty* v. *Retirement Bd. of Medford*, 425 Mass. 130, 138 (1997) (applying the substantial evidence standard of review to a retirement board decision appealed pursuant to G. L. c. 32, § 16[3][*a*], and G. L. c. 249, § 4).[9]

We likewise discern no merit in the plaintiff's argument that board member Francis McCauley was required to recuse himself. The plaintiff, without supporting authority, contends that McCauley should have recused himself. McCauley had previously served as mayor of the city and during such term the plaintiff was fired and then eventually reinstated by the civil service commission. The plaintiff contends that this raises at least the appearance of bias. In declining to recuse himself, McCauley "absolutely" denied any actual bias and stated that the firing was done not by him but by the plaintiff's manager. We also emphasize that the board consisted of five persons. In these circumstances, we conclude that the alleged "bias is itself speculative, and the prospect of any such bias influencing the decision making of other board members is implausible." *Varga* v. *Board of Registration of Chiropractors*, 411 Mass. 302, 307 (1991).

Finally, we address the plaintiff's Eighth Amendment claim. The plaintiff contends that the automatic forfeiture provision of G. L. c. 32, § 15(4), as applied to him in these circumstances, would constitute an "excessive fine" as prohibited by the Eighth

---

[8]We note that the plaintiff was entitled to view the contents of his personnel file pursuant to G. L. c. 149, § 52C, and to submit a written statement, for inclusion in his personnel file, explaining his disagreement with anything contained in the file.

[9]As there is ample evidence to support the board's finding in this regard, we consider the plaintiff's objections to the admission of other evidence to be irrelevant. Furthermore, the plaintiff's argument in this regard, presented in an unsupported paragraph, and sometimes referring to exhibit 7 and other times referring to exhibit 8, does not rise to the level of appropriate appellate argument. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

Amendment to the United States Constitution. The issue was not, however, raised before the board. When it was presented to the District Court, the judge concluded that the plaintiff "did not offer into evidence before the [board] any factual support for his claim that forfeiture of his pension benefits would violate the Eight[h] Amendment. Limited to the [board] record, . . . the court declines to consider this argument." Upon certiorari review, the Superior Court judge concluded that the issue was not properly before the court and was therefore waived "as it was not raised with the Retirement Board and was not considered by the District Court."

The plaintiff argues, however, that the District and Superior Court judges erred in considering the record closed and the issue waived because the board had no jurisdiction over constitutional questions; therefore, the plaintiff was not required to bring his constitutional challenge to the board first. Furthermore, the plaintiff submitted an affidavit in the District Court that provided a factual basis for determining his monthly retirement allowance prior to the forfeiture ($2,866.67) and the monthly health care premium he was required to pay for himself and his wife prior to the forfeiture ($600) and afterwards ($1,403.08), thereby allowing calculation of the fine. In various memoranda submitted to the District Court, he also presented legal arguments for why the forfeiture constituted an excessive fine.[10]

Our analysis of the Eighth Amendment claim begins with a recognition that there are exceptions to exhaustion requirements for challenges to the constitutionality of administrative statutes, particularly those that present pure questions of constitutional law or do not require expert fact finding by administrative agencies. See, e.g., *Gurry* v. *Board of Pub. Accountancy*, 394 Mass. 118, 126 (1985) ("Except for jurisdictional claims based upon constitutional challenges to an agency's enabling legislation, litigants involved in adjudicatory proceedings should raise all claims before the agency, including those which are constitutionally based"); *Hartford Acc. & Indem. Co.* v. *Commissioner of Ins.*, 407 Mass. 23, 28-29 (1990) ("as applied"

---

[10]We note, however, that the plaintiff did not expressly plead the Eighth Amendment claim in the complaint he filed in District Court.

challenge to the constitutionality of an insurance statute need not be presented to an administrative agency); *Liability Investigative Fund Effort, Inc.* v. *Medical Malpractice Joint Underwriting Assn.*, 409 Mass. 734, 747 (1991) (no exhaustion requirement for a constitutional challenge, particularly where there was no specialized fact finding required).[11]

The board clearly had no jurisdiction to decide the constitutionality of the forfeiture provision as applied to the plaintiff. See *ibid.*; 2 Pierce, Administrative Law § 15.5, at 1004 (4th ed. 2002) ("agencies lack the power to hold statutory provisions unconstitutional"). It is for the courts, not administrative agencies, to decide the constitutionality of statutes. Moreover, the determination of the constitutionality of a statute as applied can be one of the most difficult and sensitive tasks performed by the judiciary. This is particularly true here given the novelty of Eighth Amendment excessive fine claims,[12] the scarcity of precedent, the importance of pension rights, and the potential widespread applicability of the forfeiture provision. Recognizing this limitation on their jurisdiction, retirement boards have declined to consider constitutional challenges to G. L. c. 32, § 15, forfeitures. See *Doherty* v. *Retirement Bd. of Medford*, 425 Mass. at 133; *MacLean* v. *State Bd. of Retirement*, 432 Mass. 339, 352 n.16 (2000).

Although an agency cannot decide an ultimate constitutional issue, the question remains whether such an issue must nonetheless be brought before it to inform the agency's resolution of the statutory and regulatory questions it must consider and to draw on its specialized expertise for necessary fact finding. In the instant case, for example, the board, had it been so informed, would have been made sensitive, if it were not already, to the

---

[11]This is not a case where the constitutional claims have been brought prematurely or unnecessarily. "The Court will not pass upon a constitutional question . . . if there is also present some other ground upon which the case may be disposed of." *Ashwander* v. *Tennessee Valley Authy.*, 297 U.S. 288, 347 (1936). Here all other issues were presented to and decided by the board, leaving only the constitutionality of the statute as applied to the plaintiff outstanding.

[12]In 1998, in *United States* v. *Bajakajian*, 524 U.S. 321, 327 (1998), the United States Supreme Court stated, "This Court has had little occasion to interpret, and has never actually applied, the Excessive Fines Clause [of the Eighth Amendment]."

need to interpret statutes to avoid constitutional problems. Nevertheless, the legal issue before the board — whether the convictions were for offenses involving the plaintiff's office or position — was quite distinct from whether the forfeiture was an Eighth Amendment violation. Given this clear distinction, the multiple direct links between the crimes and the plaintiff's office, and the automatic nature of the forfeiture provision, we discern no basis for concluding that the failure to alert the board about the Eighth Amendment argument would have altered the board's analysis of the other issues within its jurisdiction.

We also conclude that the fact finding required to resolve the Eighth Amendment issue does not involve specialized expertise. In determining whether a pension forfeiture is an excessive fine, the Supreme Judicial Court has calculated the lost benefits and the ill-gotten gains to determine whether the punishment is "grossly disproportional."[13] *MacLean* v. *State Bd. of Retirement*, 432 Mass at 346, quoting from *United States* v. *Bajakajian*, 524 U.S. 321, 334 (1998).[14] This requires determining the value of the lost pension benefits after subtracting the returned contributions.[15] It would also require an understanding of the value of continued employment to the plaintiff, at least in terms of salary and increased pension benefits. The "gravity of the offense, . . . whether the violation was related to any other illegal activities, and the harm resulting from the crime" must also be considered. *MacLean* v. *State Bd. of Retirement, supra.* Although the board could have been helpful in developing some of the underlying

---

[13]The Supreme Judicial Court has done so after assuming but not deciding that a forfeiture was a fine and punitive. See *MacLean* v. *State Bd. of Retirement*, 432 Mass. at 346. Guidance on these threshold issues has been provided in *United States* v. *Bajakajian*, 524 U.S. at 327, where the United States Supreme Court concluded that "the word 'fine' was understood to mean payment to a sovereign as punishment for some offense." The Court also concluded that the forfeiture of currency ordered for violation of a statute prohibiting the currency's removal from the United States, in violation of a reporting requirement, constituted punishment. *Id.* at 328.

[14]To do so, the Supreme Judicial Court has stated that "[i]n any forfeiture case it would be helpful for the judge to make a finding of the total value of the forfeiture involved." *MacLean* v. *State Bd. of Retirement*, 432 Mass. at 348 n.11.

[15]The plaintiff submitted an affidavit and life expectancy table to calculate the value of the lost pension benefits. The record does not contain the amount of the returned contributions.

facts, most of these facts are not within the special expertise of a retirement board. Rather, they involve the type of fact finding ordinarily undertaken by the courts.[16]

In sum, the resolution of the Eighth Amendment as applied challenge to the forfeiture provision in the statute is ultimately and undeniably a core judicial function. It is also outside the jurisdiction and special expertise of the board and separate and apart from the issues the board needs to resolve. Consequently, the failure to raise the issue before the administrative agency cannot result in the closure of the record and the waiver of the constitutional claim. A remand of the Eighth Amendment claim is therefore required.

*Conclusion.* We conclude that the plaintiff's convictions were for offenses involving violation of the laws applicable to his office or position, and that there was no error in the refusal of board member McCauley to recuse himself from the hearing. However, it was error to deem the Eighth Amendment claim waived. Accordingly, the judgment of the Superior Court is vacated, and the case is remanded to the District Court for consideration of the plaintiff's Eighth Amendment claim.

*So ordered.*

---

[16]We note further that G. L. c. 32, § 16(3)(*a*), as amended by St. 1982, c. 630, § 21, provides that the District Court shall "review such action and decision, *hear any and all evidence* and determine whether such action was justified" (emphasis added). Although this court has previously noted that the scope of review provided by this language is not clear and that "[t]he reference to 'evidence' in G. L. c. 32, § 16(3), may refer only to evidence of what occurred in the proceedings before the board," this interpretative statement was not made in the context of a constitutional challenge. *MacDonald* v. *Commissioner of the Metropolitan Dist. Commn.*, 33 Mass. App. Ct. 455, 462 n.8 (1992). To decide the Eighth Amendment challenge here, the District Court is entitled to "hear any and all evidence" necessary to make the required factual findings.