JACOB J. KAPLAN *vs.* E. MARK SULLIVAN & others.

Suffolk.    February 7, 1935. — February 27, 1935.

Present: RUGG, C.J., PIERCE, FIELD, DONAHUE, & QUA, JJ.

*Boston Finance Commission*, Designation of chairman. *Public Officer.* Words, "Appoint," "Designate."

The chairman of the Boston Finance Commission does not hold as chairman a public office separate and distinct from the office which he holds as a member of the commission.

The Governor may terminate a designation of a member of the Boston Finance Commission as chairman thereof at his pleasure and without notice, specification of cause or hearing; the provisions of G. L. (Ter. Ed.) c. 30, § 9, are not applicable to such a termination.

The designation of a member of the Boston Finance Commission as chairman thereof had the effect of terminating the designation previously made of another member.

PETITION for a writ of mandamus, filed in the Supreme Judicial Court for the county of Suffolk on January 11, 1935, and afterwards amended.

The case was reserved and reported by *Pierce*, J., for determination by the full court.

*L. B. Newman*, (*J. J. Kaplan* with him,) for the petitioner.

*F. R. Mullin*, (*G. I. Kellaher & E. P. Keleher* with him,) for the respondent Sullivan.

*J. J. Ronan*, Assistant Attorney General, (*H. P. Fielding*, Assistant Attorney General, with him,) as *amici curiae*.

RUGG, C.J.    This petition for a writ of mandamus has

been reserved for determination upon the petition, the answers and a statement of agreed facts. The object of the proceeding is to determine whether the petitioner is the chairman of the finance commission of the city of Boston. The material facts shown by the record are these: In consequence of an existing vacancy, on December 27, 1934, the Governor of the Commonwealth with the advice and consent of the Council constituted and appointed the petitioner to be a member of the finance commission, and designated him chairman " . . . to hold said trust for the remainder of the term of Five Years, ending on the eighteenth day of August, nineteen hundred and thirty-five and until his successor shall have been appointed and qualified, unless sooner removed therefrom." The petitioner qualified and entered upon the performance of his duties. A vacancy again existing in the finance commission on January 9, 1935, the Governor elected for the term beginning on the first Wednesday in January, 1935, with the advice and consent of the Council, appointed the respondent E. Mark Sullivan (hereafter called the respondent) to be a member of the finance commission for the remainder of the term of five years ending on the seventeenth of July, 1938, and until his successor shall have been appointed and qualified, unless sooner removed therefrom, and designated him to be chairman. The respondent duly qualified on the same day. He asserts that he is chairman of the finance commission and he has been recognized as such by the other members except the petitioner.

The finance commission of the city of Boston was established by St. 1909, c. 486, § 17. It is there provided that it shall consist of five members to be appointed within sixty days after the passage of the act, "one for the term of five years, one for four years, one for three years, one for two years, and one for one year, and thereafter as the terms of office expire in each year one member for a term of five years. Vacancies in the commission shall be filled for the unexpired term by the governor with the advice and consent of the council. The members of said commission may be removed by the governor with the advice and consent of the

council for such cause as he shall deem sufficient. The chairman shall be designated by the governor. His annual salary shall be five thousand dollars, which shall be paid in monthly instalments by the city of Boston. The other members shall serve without pay."

The section just quoted is a part of a statute relating to the administration of the city of Boston and amending its charter. Thereby the finance commission was first created. Other sections of the chapter confer upon the commission important duties of investigation as to the finances and business management of Boston and power to summon and examine witnesses and to perform other functions. No special powers are conferred upon any one member above the others. Each member must be appointed by the Governor with the advice and consent of the Council. The members may be removed by the Governor with the advice and consent of the Council. One of the members must be designated as chairman by the Governor but without the advice and consent of the Council. The salary of the chairman is fixed, and the obligation to pay it in specified instalments is imposed on the city. No express provision is made for the removal of the chairman. There is no definition of the powers or duties of the chairman. These are left to implication. When a member is designated as chairman, he retains all the powers and is subject to all the duties of a member. A substantial salary is paid to the chairman. The other members serve without pay.

The relevant terms of the statute reveal no legislative intention to create the office of chairman of the commission as separate and distinct from the office of member of the commission. One who has been designated as chairman manifestly would cease to be chairman when for any reason he was no longer a member of the commission. One designated as chairman might resign as such without affecting his membership on the commission. The salary paid to the chairman indicates that he must contribute more to the work required of the commission than the other members, who receive no compensation. The nature and importance of the duties imposed on the commission denote that all

its members are public officers. *Attorney General* v. *Drohan*, 169 Mass. 534. The circumstance that the chairman receives a fixed annual salary does not place him on any different footing from his associates in this respect, although in other conditions it might be entitled to weight. *Attorney General* v. *Tillinghast*, 203 Mass. 539.

A distinction is made in the manner of selection of members and of the chairman of the commission. The word "appoint" is used with respect to selection of members. The word "designated" is employed to indicate the method of selection of the chairman. These two words often may have the same meaning, but in this statute they appear to be in contrast with each other and to indicate a difference in signification. There are many connections in which wider and more permanent import is attributable to the word "appoint" than to the word "designate." For example, judicial officers are appointed but they may be assigned or designated to particular duties by the Chief Justice or other appropriate judicial officer. *Ashley* v. *Three Justices of the Superior Court*, 228 Mass. 63, 72. *Commonwealth* v. *Leach*, 246 Mass. 464, 474–475. *Buchannan* v. *Meisner*, 279 Mass. 457, 460. The word "designate" is not infrequently used when further or different duties or additional functions are imposed on an existing public officer. The implication of § 17 as a whole is that a designation has somewhat less stability of tenure than an appointment. The result is that in our opinion the office of chairman is not separate and distinct from the office of member of the commission.

Since there is no provision in the governing statute as to the tenure of office of chairman, or as to a change in chairman, that is left to implication. The circumstance that a definite term is established for the members of the commission, while no term is fixed for the chairman, is significant. These factors in combination in the same section indicate that the member designated as chairman is not thereby given a statutory permanence in office equivalent to the remainder of his term as member or for any other definite period. The power of the Governor to designate

the chairman is a continuing one. In this context, the power to designate the chairman is conferred in general terms and without special or implied restriction. In these circumstances, power in the Governor to terminate a designation previously made is implied. This conclusion is reached as matter of statutory interpretation. It appears to be necessary in order to give effect to the words used and to the legislative intent expressed by them.

There is no provision of law requiring notice of intention to terminate a designation as chairman, or a hearing before executing that intention. None is specified in § 17 of St. 1909, c. 486. The express mandate as to the method of removal of members of the commission, in contrast with the omission of any direction as to the removal of the chairman, imports a different legislative intent as to the chairman. In the absence of other provision for removal, a public officer "appointed by the governor, may at any time be removed by him for cause." G. L. (Ter. Ed.) c. 30, § 9. That section is not applicable to the case at bar because, as already pointed out, the chairman does not hold a public office as distinguished from being a member of the finance commission. Under St. 1909, c. 486, § 17, the petitioner was not appointed as chairman by the Governor. Being already appointed and commissioned as a member of the finance commission, the petitioner was designated to the performance of the duties of chairman. He has not been removed from any office to which he was appointed by the Governor. A designation to special duties as chairman has been brought to an end. No specification of cause for such action was required, since it did not constitute removal from a public office.

The designation of the respondent as chairman had the effect of bringing to an end the prior designation of the petitioner. *Williams* v. *Gloucester*, 148 Mass. 256, 260. *Bailen* v. *Board of Assessors*, 241 Mass. 411, 412. *Blake* v. *United States*, 103 U. S. 227, 237.

*Petition dismissed.*