J. Clifford Chadwick & others *vs.* Sidney J. Scarth
& others.

Essex.    October 16, 1978. — December 12, 1978.

Present: Keville, Armstrong, & Brown, JJ.

*Methuen. Municipal Corporations*, Town council form of government,
Housing authority. *Words*, "City," "Town."

A town which adopted a charter under the Home Rule Procedures Act,
G. L. c. 43B, whereby the voters elect a town council in which is
vested the municipal legislative powers and which appoints a town
administrator who is the chief executive officer is a city for pur-
poses of c. 121B, and the town administrator qualifies as a mayor
within the meaning of c. 121B, § 1, empowered to appoint members
of the housing authority under c. 121B, § 5. [727–730]

Civil action commenced in the Probate Court for the
county of Essex on December 23, 1976.

The case was reported by *Mayo*, J.

*Robert J. O'Sullivan* (*Donald H. Sullivan* with him) for
the plaintiffs.

*Peter J. McQuillan* for the defendants.

Armstrong, J. This action for declaratory and injunc-
tive relief arose from a dispute as to which of two groups
of individuals comprises the Methuen Housing Authority
(authority). After the parties had entered into a state-
ment of agreed facts, the judge reported the case to this
court without decision.

The plaintiffs had been elected to the authority by the
town in 1968, 1969 and 1970, respectively, pursuant to
identical provisions of G. L. c. 121, § 26L (as in effect prior
to St. 1969, c. 751, § 2), and G. L. c. 121B, § 5 (inserted by
St. 1969, c. 751, § 1): "In a town, four members [of the
housing authority] shall be elected by the town . . . ."

While their elective terms had all expired by March, 1975, the plaintiffs claim continuing title to their offices as holdovers on the ground that no successors have been elected in accordance with the quoted statutory provision.

Meanwhile, Methuen had, effective January 1, 1973, adopted a charter under the Home Rule Procedures Act, G. L. c. 43B, whereby the voters elect a "town council" in which is vested the municipal legislative powers and which appoints a "town administrator," who, with certain exceptions, is the chief executive officer. See *Opinion of the Justices,* 365 Mass. 655, 657 (1974). The town council then adopted a document entitled "General Ordinances of the Town of Methuen," § 6.27(a) of which provides that four members of the housing authority are to be appointed by the town administrator,[1] which appointments, by the terms of the charter, are subject to confirmation by the town council. In December, 1976, the town administrator appointed four of the defendants (referred to in this opinion, for convenience, simply as "the defendants"[2]) to the authority, and the appointments were confirmed by the council on December 20. The present action was commenced three days later, and the judge entered interlocutory orders which enjoined the defendants from purporting to act as members of the authority pending a judicial determination of the action.

The defendants contend that the provision of G. L. c. 121B, § 5, relied upon by the plaintiffs is no longer applicable to Methuen on the ground that the adoption of the charter had the effect of converting Methuen from a town into a city. In the case of a city, § 5 provides that "four members of a housing ... authority shall be ap-

---

[1] Under the same section of the ordinance and under G. L. c. 121B, § 5, a fifth member is appointed by the Department of Community Affairs.

[2] The other defendants are the town clerk, the town administrator and the town of Methuen.

Chadwick v. Scarth.

pointed by the mayor subject to confirmation by the city council . . . ." The word "mayor" is defined by G. L. c. 121B, § 1, as "the city manager of the city in all cities having a Plan D or Plan E charter and the duly elected mayor of the city in all other cities." While Methuen has no "city manager" or "city council," and is not governed by a Plan D (G. L. c. 43, § 79 et seq.) or Plan E (G. L. c. 43, § 93 et seq.) charter, the defendants contend that the respective powers of the town administrator and town council are so nearly identical to those of a city manager and city council under a Plan D and Plan E charter that the town administrator should be regarded as within the definition of "mayor" in G. L. c. 121B, § 1, and that he, with the approval of the town council, should be treated as the appointing authority of housing authority members under G. L. c. 121B, § 5. While the matter is by no means free from doubt, we agree with the defendants.

The threshold question, of course, is whether Methuen is a city or a town. The existence of that question regarding the status of Methuen and municipalities having similar c. 43B charters has been noted on several occasions by the Supreme Judicial Court and by this court, but neither court has yet been required to answer it. On each such occasion, however, the court has emphasized that the retention of the name "Town" by the municipality is immaterial and that the substance of the charter which has been adopted controls. See *Opinion of the Justices*, 365 Mass. 655, 658 (1974); *Del Duca* v. *Town Administrator of Methuen*, 368 Mass. 1, 9 n.6 (1975); *Opinion of the Justices*, 368 Mass. 849, 855 (1975); *Woodland Estates, Inc.* v. *Building Inspector of Methuen*, 4 Mass. App. Ct. 757, 763 (1976).

"Traditionally, the distinction between towns and cities was that the former were governed directly by the qualified inhabitants, while the latter were governed indirectly by the inhabitants through representatives. See *Opinion of the Justices*, 229 Mass. 601, 609 (1918). Following adoption of its home rule charter, Methuen clearly

has a representative form of government." *Del Duca* v. *Town Administrator of Methuen, supra.* The only recognized exception to that distinction of which we are aware is that of "towns" having a representative town meeting form of government, which would be "cities" in the traditional sense (*Opinion of the Justices*, 229 Mass. at 609-610), but which are treated as "towns" because of the adoption of art. 70 of the Amendments to the Constitution of the Commonwealth (since superseded by art. 89, the Home Rule Amendment) and because of the enactment of G. L. c. 43A, "Standard Form of Representative Town Meeting Government." See Lincoln, Some Notes on Representative Town Meetings, 33 Mass. L.Q. (No. 1) 31 (1948). The words "city" and "town" are nowhere defined in G. L. c. 121B, and we can discover nothing in that chapter, subject to the single exception just noted,[3] to suggest that the words are to be given other than their commonly understood, traditional meaning. We therefore conclude that Methuen, as now constituted, is a "city" for purposes of that chapter. G. L. c. 4, § 6, Third.

The more difficult question is whether the town administrator qualifies as a "mayor" as defined in G. L. c. 121B, § 1, and is therefore empowered to appoint members of the housing authority under G. L. c. 121B, § 5. While a literal reading of § 1 would require a negative answer to that question, we regard such a reading as inappropriate in the circumstances because it is contrary to the overall legislative scheme underlying c. 121B.

To the extent that c. 121B deals with the powers and duties of the municipality in which a housing authority is located, as distinguished from those of the housing authority itself, the chapter demonstrates a clear legislative intention to allocate those powers and duties among

---

[3] Chapter 121B contains several provisions which confer powers and impose duties in the case of a "town" upon the "town meeting." See, e.g., §§ 3, 4 and 5. We take that to include a representative town meeting as well as an open one.

the various municipal bodies and officers in conformity
with the governmental structure of the individual
municipality. Thus, under § 1, a "mayor" is the city
manager in Plan D and Plan E cities and the duly elected
mayor in other cities.[4] That section also contains a defini-
tion of the term "municipal officers": "in the case of all
cities, the city council with the approval of the mayor,
and in the case of all towns, the board of selectmen with
the approval of the town manager, if any." Among the
functions allocated to the "municipal officers" as thus
defined are those of serving as "the local governing body
for purposes of any approval or action of such body re-
quired by federal legislation" (§ 1) and as the local ap-
proving authority for any urban renewal plan (§ 48) and
any land acquisition for urban renewal purposes (§ 47).
We are persuaded that the absence from c. 121B of any
express recognition of the form of government such as
that in Methuen arose from oversight and should not be
regarded as indicative of legislative intention to force
such municipalities into a pattern wholly unsuited to
their governmental structures. Compare *Mailhot* v. *Trav-
elers Ins. Co.*, 375 Mass. 342, 344–347 (1978).

Our conclusion is borne out by the fact that a number
of provisions in c. 121B presuppose that every city has a
"mayor" and every town has a "board of selectmen." That
presupposition manifests itself in the definition of the

---

[4] Chapter 121B, inserted by St. 1969, c. 751, § 1, was derived from
G. L. c. 121, §§ 26I-26MMM, repealed by § 2 of the 1969 statute, and
the definitions in c. 121B, § 1, including that of the word "mayor,"
were largely derived from the old c. 121, § 26J. However, when § 26J
was enacted by St. 1946, c. 574, § 1, it contained no definition of that
word, presumably with the result that all functions assigned to a
"mayor" had to be exercised by that official even in municipalities
having a city manager form of government. As a result, a bill was filed
in the Legislature in 1951 to insert a definition of "mayor" to include
a city manager, but the original bill referred only to city managers in
Plan E cities. 1951 House Doc. No. 2394. The Legislature amended it
to cover Plan D cities as well (1951 House Doc. No. 2459), and the
revised bill was enacted in the latter form with an emergency pream-
ble as St. 1951, c. 322.

key term, "municipal officers," discussed above. The "mayor" or "selectmen," as the case may be, also play a crucial role in the removal of members of a housing or redevelopment authority (§ 6), the approval of certain contracts between the authority and the Federal government (§ 30), and the examination of the authority's annual accounts (§§ 29, 52). Methuen has no "board of selectmen" nor any public body analogous to one. Thus, if it has no "mayor" within the meaning of the definition of that term in § 1, there is no one in Methuen empowered to perform those important functions. It cannot be assumed that the Legislature intended to create a vacuum. Compare *Massachusetts Comm. Against Discrimination* v. *Liberty Mut. Ins. Co.*, 371 Mass. 186, 190-191 (1976). Mere inadvertence seems a more plausible explanation for the Legislature's omission to take account in c. 121B of the variant forms of municipal government stemming from the adoption of the Home Rule Amendment and the Home Rule Procedures Act.

In the absence of explicit direction by the Legislature, it seems likely that it would have treated Methuen in the same manner as cities having a Plan D or Plan E charter. Accordingly, we think it appropriate to fashion an "adjunct" to the pertinent provisions of c. 121B so that Methuen and municipalities like it[5] may be treated as if they were cities having such a charter, their town councils (or like bodies) treated as "city councils," and their town administrators (or like officials) treated as "city managers." Compare *Mailhot* v. *Travelers Ins. Co.*, 375 Mass. at 348.

---

[5] It is our understanding that as of 1974 the municipalities in this category included Agawam and Southbridge, as well as Methuen. See *Opinion of the Justices*, 365 Mass. 655, 657 (1974). Since then, however, the Southbridge charter has been amended by the General Court in such a way as to distinguish it from those of the other two municipalities. See St. 1975, c. 790; *Opinion of the Justices*, 368 Mass. 849, 855-856 (1975). We express no opinion as to whether some or all of what we say today has any application to Southbridge.

The case is remanded to the Probate and Family Court Department, where a judgment is to be entered declaring the appointments by the town administrator to the Methuen Housing Authority valid and granting such further relief, not inconsistent with this opinion, as may be necessary and appropriate in the circumstances.

*So ordered.*