ROBERT A. BLASER *vs.* TOWN MANAGER OF METHUEN.

Essex. February 13, 1985. — April 26, 1985.

Present: SMITH, CUTTER, & FINE, JJ.

*Municipal Corporations*, Officers and employees, Assessors. *Public Board. Methuen.*

The position of chairman of a municipal board of assessors is not a separate office higher than that of a member of the board, and, consequently, provisions of a town's home rule charter pertaining to the removal of officers by the town manager did not apply to the manager's replacement of the chairman of the town's board of assessors by his designating a different member of the board as chairman. [729-730]

CIVIL ACTION commenced in the Superior Court Department on May 4, 1982.

The case was heard by *Francis L. Lappin,* J., on a master's report.

*Maurice J. Lariviere, Jr.*, Town Solicitor, for the defendant.

*Peter J. McQuillan* for the plaintiff.

CUTTER, J. On December 21, 1978, Blaser was referred to by the then town manager (manager) of Methuen (at the time of the appointment of a new assessor) as chairman of the board of assessors. He had previously on July 1, 1974, been designated as chairman by the manager serving at that time. Blaser was appointed by another manager for a further three-year term as assessor by a letter dated October 9, 1981, "for a term to expire January 2, 1983." He apparently had been a holdover assessor from a prior three-year term ending on January 2, 1980, and thus, by the letter of October 9, 1981, was being appointed for the unexpired portion of the three-year term ending January, 1983. By the same letter of October 9 Frank Quinn was appointed assessor "for a term to expire January 2, 1984." Quinn was also mentioned in the letter as follows: "The [b]oard of [a]ssessors will now consist of the following

members whose terms in accordance with the General Laws, will expire as indicated. The [m]anager has designated a [c]hairman ([c]hief [a]ssessor) pursuant to his authority . . . [under] the Methuen . . . [c]harter.

|  | Term as Assessor to Expire |
|---|---|
| Frank Quinn, Chairman ([c]hief [a]ssessor for one year) | 1/2/84 |
| Robert Blaser, Assessor | 1/2/83 |
| Dorothy Bruno, Assessor | 1/2/82." |

Blaser on May 4, 1982, brought this complaint in the Superior Court, pursuant to G. L. c. 249, § 5, seeking reinstatement as chairman of the board of assessors and retroactive restoration of his loss in pay. He later moved for summary judgment. A Superior Court judge referred the matter to a master to propose a "decision on the . . . motion . . . and, if denied, [to] proceed with a usual hearing."

The master recommended denial of the motion and made subsidiary findings of essentially the facts already stated above (and the charter and ordinance provisions mentioned in the Appendix). The master also found (a) that the manager reduced Blaser's weekly pay to $373.71 and raised that of Quinn to $439.59, effective October 26, 1981, and (b) that Blaser "was never told . . . the reasons for his change in status."

The master, on the basis of his subsidiary findings (and the applicable statutes and charter and ordinance provision), concluded that Blaser was improperly removed as chairman because there had been no compliance with the provisions in the charter (see Appendix, charter, § 9-10) for the removal of town officers and that the Methuen personnel ordinance prevented his reduction in pay. This conclusion appears to be based on what we hold to be the master's erroneous determination that the position of chairman of the board of assessors is "a separate and higher office than that of an assessor."

The manager filed objections to the master's report and moved to strike the master's ultimate conclusions. The master's report was adopted on June 18, 1984. Judgment was entered on June 18, 1984, that Blaser recover $10,144.47 and interest. The manager appealed. We reverse.

Assessors are public officers whose duties are prescribed by statute. See *Alger* v. *Easton*, 119 Mass. 77, 78 (1875); *Hathaway* v. *Everett*, 205 Mass. 246, 247 (1910). See also *Assessors of Haverhill* v. *New England Tel. & Tel. Co.*, 332 Mass. 357, 360 (1955); Nichols, Taxation in Massachusetts 165 et seq. and 451 (3d ed. 1938). The selection of assessors is now governed primarily by G. L. c. 41, §§ 24[1] and 25. See Randall & Franklin, Municipal Law § 223 (1982).[2]

We consider whether the master's general conclusions were justified by his subsidiary findings and were correct as matter of law, taking into account relevant decisional, statutory, and other material. See *Chase* v. *Pevear*, 383 Mass. 350, 359-360 (1981). We decide that the conclusions were not justified.

Assessors operate as a board. Even if in practice the chairman may do more work and assume more duties, probably principally administrative, than the other assessors, the whole board as such must act in any significant decision. In *Bryson* v. *Mayor of Waltham*, 329 Mass. 524, 524-525 (1952), the mayor in 1950 appointed Bryson an assessor for three years and, pursuant

---

[1] Section 24 as amended by St. 1967, c. 123, § 1, reads in part: "There shall be one, three, five, seven or nine assessors in every city and one, three or five assessors in every town. The assessors in every city and town *shall be elected or appointed as otherwise provided by law*; but as nearly one third of their number as may be shall be elected or appointed annually, *each to hold office for three years and thereafter until his successor is duly elected or appointed*. As soon as may be after such annual election or appointment, the assessors of every city and and town shall organize by choosing one of their number as chairman and another as secretary or clerk of their board . . ." (emphasis supplied).

[2] It was recognized in *Errico* v. *Mayor of Revere*, 352 Mass. 527, 528-529 (1967), that a provision in a standard form charter relating to assessors could determine the method of their selection. It has not been argued to us that Blaser's appointment on October 9, 1981, as assessor by the manager was in any way defective, and we assume that the provisions of a "home rule" charter (see Appendix) adopted under G. L. c. 43B may be given like

to an ordinance, in 1951 designated him as chairman for one year. In 1952, a successor mayor designated as chairman for one year another person, also then appointed an assessor for three years. It was held that "the entire board was the head of the assessing department" and that the statutory provision governing the removal of the head of a department under a Plan B charter (G. L. c. 43, § 61) does "not apply to the removal of a chairman of the board of assessors." *Id.* at 525. The court upheld the new designation.

The *Bryson* case cited *Kaplan* v. *Sullivan*, 290 Mass. 67 (1935), which, at 69-70, held that, in a commission composed entirely of public officers (there the Boston Finance Commission), "the office of chairman . . . [is not] separate and distinct from the office of member of commission." The *Kaplan* case also established (at 69-70) that a salary may be paid to the chairman, for the time being, of such a commission or board when other members are not compensated. In principle, this would support provision for the chairman of such a board of a higher salary than that paid to other members. The case (at 70) recognizes the significant difference between an *appointment* to membership on the commission and the *designation* of a chairman. See *Perkins* v. *Selectmen of Framingham*, 313 Mass. 322, 323 (1943). We perceive nothing in *MacBrayne* v. *City Council of Lowell*, 241 Mass. 380, 384-386 (1922) (discussing a mayor's removal under a statutory charter of a holdover superintendent of police) which affects the controlling precedents of the *Bryson* and *Kaplan* cases in the present dispute.[3]

---

effect. The final sentence of § 24 as quoted in note 1, *supra*, may be viewed as directory rather than mandatory and as open to variation when applied to a charter provision for appointment rather than election. No argument is made that the chairman should have been elected by the board (rather than designated) in accordance with § 24.

[3] We note that the procedure for a hearing prescribed by § 9-10 of the Methuen charter (see Appendix, *infra*) is, by virtue of the final sentence of § 9-10, in any event inapplicable "to a person who holds a position for a fixed term, when his term expires." It has been shown that, under G. L. c. 41, § 24 (see note 1, *supra*), Blaser's term both as assessor and chairman had not expired when on October 9, 1981, he was appointed assessor but Quinn

The judgment is reversed. Judgment is to be entered for the manager.

*So ordered.*

. APPENDIX.

RELEVANT PROVISIONS OF THE "HOME RULE" CHARTER AND ONE ORDINANCE OF METHUEN (see, for discussion of this charter under G. L. c. 43B, *Chadwick* v. *Scarth*, 6 Mass. App. Ct. 725 [1978]).
[All emphasis is supplied.]
*Relevant provisions of charter.*
*Article 3. Section 3-2. Authority and Duties* (of the Town Manager):
"The town manager shall be the chief administrative officer of the town and be responsible to the town council for the administration of all town affairs placed in his charge by or under this charter. He shall have the following authority and duties:
"(a) He shall supervise and direct the administration of all departments, commissions, boards and offices, except . . . [exceptions not pertinent].
"(b) Except as otherwise provided by this charter, the *town manager shall appoint upon merit and fitness alone, and may remove* subject to the provisions of the civil service laws or other pertinent statutes where applicable, *all officers and employees of the town*, except employees of the school department. All appointments made by the town manager shall be subject to confirmation by the town council. . . .
"(c) He shall fix the compensation of all town officers and employees appointed by him within the limits established by town ordinances and existing appropriations.
". . . .

"(l) The town of Methuen shall have a board of no less than three (3) assessors *appointed by the town manager and he shall designate one of his appointees as chairman thereof.*"
*Section 9-10* deals with removal or suspension of certain employees:
"(a) Any appointed officer or full-time salaried employee of the [t]own, not subject to the provisions of the State [c]ivil [s]ervice [l]aw, whether appointed for a fixed or an indefinite term, may be suspended or removed from office by the appointing authority for good cause. The term "cause" shall include, but not be limited to, the following: incapacity other than

---

was designated chairman. He was not removed as assessor, which was the office held by him, nor was he transferred to any other office. Thus there is no room for the application of § 5 (h) of the Methuen personnel ordinance. See final paragraph of the Appendix, *infra.*

temporary illness, inefficiency, insubordination and conduct unbecoming the office.

"    . . . .

"(c) The appointing authority when removing any such officer or employee shall act in accordance with the following procedure . . . ."

[Subsection (1) provides for written notice of intent to remove and a statement of the cause or causes. Subsection (2) provides for a public or closed hearing before the town council. Subsection (3) provides for prompt decision and notice after hearing. Subsection (4) provides, if the employee fails to request a hearing, for final action by the appointing authority and notice to the employee of the action.]

The final sentence of § 9-10 reads, *"Nothing in this [s]ection shall be construed as granting a right to such a hearing to a person who holds a position for a fixed term, when his term expires."*

*The Methuen Personnel Ordinance.*

Section 5, subsection (h), provides that an "employee who is transferred to a similarly rated or to a lower rated position for the convenience of the [m]unicipality shall enter the new position at his rate in the position from which he is transferred."