JAMES FLAHERTY *vs.* JUSTICES OF THE HAVERHILL DIVISION
OF THE DISTRICT COURT DEPARTMENT OF THE TRIAL COURT
& another[1] (and two companion cases[2]).

No. 12-P-22.

Essex. September 24, 2012. - January 18, 2013.

Present: CYPHER, BERRY, & AGNES, JJ.

*Pension. Public Employment,* Forfeiture of pension. *Municipal Corporations,* Pensions. *Constitutional Law,* Excessive fines clause.

In a civil action, the forfeiture of the pension of a city's highway department superintendent, pursuant to G. L. c. 32, § 15(4), based on the superintendent's conviction of larceny over $250 for the theft of paving materials from the highway department did not violate the ban on excessive fines set forth in the Eighth Amendment to the United States Constitution, where forfeiture of the pension was not disproportionate to the offense, the circumstances of which demonstrated both its gravity and the superintendent's high degree of culpability [122-125]; further, there was no error in an order for repayment by the superintendent of an overage of pension payments beyond his individual contributions [125].

CIVIL ACTIONS commenced in the Superior Court Department on April 23, 2010; April 27, 2010; and August 9, 2010, respectively.

After consolidation, the cases were heard by *Robert A. Cornetta,* J., on a motion for judgment on the pleadings.

*Thomas J. Gleason* for James Flaherty.

*Michael Sacco* for retirement board of Haverhill.

BERRY, J. On June 2, 2009, the plaintiff, James Flaherty, was convicted of larceny for stealing paving supplies from the Haverhill highway department (highway department). See G. L. c. 266, § 30. Flaherty was the superintendent of the highway department at the time of the theft.

---

[1] Retirement Board of Haverhill.

[2] Retirement Board of Haverhill *vs.* James Flaherty; James Flaherty *vs.* Retirement Board of Haverhill.

Flaherty contends that the forfeiture of his pension resulting from his conviction, as mandated by G. L. c. 32, § 15(4),[3] violates the Eighth Amendment to the United States Constitution ban on excessive fines. Flaherty also argues that the Superior Court judge, on certiorari review, erred in ordering that he repay all pension funds that he received in excess of his actual contributions.

Between the date of Flaherty's voluntary retirement and the date of his larceny conviction, Flaherty had received $148,098.84 in pension benefits. Of this amount, $84,090.82 represented the amount that Flaherty had contributed into his pension account, and $64,008.02 was an overage beyond his individual contributions (i.e., the difference between $148,098.84 and $84,090.82). For the reasons that follow, we affirm the order of forfeiture and the order for repayment of the overage.

1. *Background.* We summarize the facts from the record. Flaherty was employed by the city of Haverhill (city) beginning in 1962 and enrolled in the city's pension system that same year. In 2004, Flaherty became the superintendent of the city's highway department. Flaherty's son was also employed by the highway department from 1992 until 2007. Between 2004 and 2006, Flaherty and his son stole several truckloads of paving materials from the highway department for use in their private paving business.

On April 6, 2007, Flaherty voluntarily retired and began receiving pension payments effective that date. On June 29, 2007, a grand jury returned six indictments against Flaherty, approximately three months after his voluntary retirement — a time sequence indicating that Flaherty would have been aware

---

[3]General Laws c. 32, § 15(4), inserted by St. 1987, c. 697, § 47, provides as follows:

> "In no event shall any member after final conviction of a criminal offense involving violation of the laws applicable to his office or position, be entitled to receive a retirement allowance under the provisions of section one to twenty-eight, inclusive, nor shall any beneficiary be entitled to receive any benefits under such provisions on account of such member. The said member or his beneficiary shall receive, unless otherwise prohibited by law, a return of his accumulated total deductions; provided, however, that the rate of regular interest for the purpose of calculating accumulated total deductions shall be zero."

of the criminal investigation at the time of his voluntary retirement. Following a trial, Flaherty was convicted on June 2, 2009, of larceny over $250 for the theft of the paving materials.[4]

After an administrative hearing, the city's retirement board (retirement board) ruled on September 2, 2009, that Flaherty's larceny conviction was connected to his position as the superintendent of the highway department. This triggered the automatic forfeiture of Flaherty's pension under G. L. c. 32, § 15(4).[5] See *State Bd. of Retirement* v. *Woodward*, 446 Mass. 698, 705 (2006) (pension forfeiture under G. L. c. 32, § 15[4], occurs by operation of law and is a mandatory consequence of conviction connected to office).

Upon review of the retirement board's decision, a District Court judge concluded that the pension forfeiture was not an excessive fine for Eighth Amendment purposes. However, the District Court judge concluded that Flaherty was entitled to keep any pension funds he received prior to the date of his conviction on June 2, 2009 — even to the extent that the payments running to that date exceeded Flaherty's actual pension contributions. On further certiorari review, a Superior Court judge affirmed the pension forfeiture but determined that Flaherty could not retain any pension funds he received in excess of his actual pension contributions, and ordered the repayment of the $64,008.02 overage.

2. *The Eighth Amendment challenge.* Flaherty concedes that his thefts were "a criminal offense involving violation of the laws applicable to his office," thereby invoking G. L. c. 32, § 15(4). See *Gaffney* v. *Contributory Retirement Appeal Bd.*,

---

[4]A grand jury returned a total of six indictments against Flaherty: one count of larceny over $250, G. L. c. 266, § 30 (for which Flaherty was convicted as described, *supra*); one count of procurement fraud, G. L. c. 266, § 67A; one count of improper compensation by a municipal employee, G. L. c. 268A, § 17(a); and three counts of making and subscribing a false tax return, G. L. c. 62C, § 73(f)(1). Flaherty pleaded guilty to the three counts of making and subscribing a false tax return. He was acquitted on the charge of procurement fraud, and his motion for a required finding of not guilty on the charge of improper compensation by a municipal employee was allowed.

[5]In the District Court proceedings, the parties stipulated that the total value of Flaherty's pension, based on Flaherty's life expectancy and including health benefits for himself and his spouse, would be $940,000. We use that figure herein.

423 Mass. 1, 4-5 (1996) (larceny by member of funds from department that member oversaw triggered § 15[4]); *State Bd. of Retirement* v. *Bulger*, 446 Mass. 169, 179-180 (2006) (clerk-magistrate's convictions of perjury and obstruction of justice effected pension forfeiture under § 15[4]); *Durkin* v. *Boston Retirement Bd.*, *ante* 116, 118-119 (2013). However, as previously noted, Flaherty contends that pension forfeiture was not justified because it was an excessive fine for his illegal conduct.

"The excessive fines clause [of the Eighth Amendment] 'limits the government's power to extract payments . . . "as punishment for some offense." ' *United States* v. *Bajakajian*, 524 U.S. 321, 328 (1998), quoting *Austin* v. *United States*, 509 U.S. 602, 609-610 (1993)." *MacLean* v. *State Bd. of Retirement*, 432 Mass. 339, 345 (2000). A fine is excessive for Eighth Amendment purposes "if it is grossly disproportional to the gravity of [the triggering] offense." *Id.* at 346, quoting from *Bajakajian*, 524 U.S. at 334. The precise issue whether a pension forfeiture under G. L. c. 32, § 15(4), may be punitive and a fine so as to invoke Eighth Amendment protection has not been decided in Massachusetts case law. Rather, the courts have assumed for purpose of analysis that the Eighth Amendment may apply to pension forfeiture. See, e.g., *MacLean*, 432 Mass. at 346 (assuming without deciding that a § 15[4] forfeiture is both punitive and a fine for Eighth Amendment purposes); *Maher* v. *Retirement Bd. of Quincy*, 452 Mass. 517, 522 (2008), cert. denied, 129 S. Ct. 1909 (2009) (same). We follow that path of analysis here and assume that the Eighth Amendment applies to a G. L. c. 32, § 15(4), forfeiture.

Flaherty argues that the forfeiture of what would be $940,000 in lifetime pension benefits is grossly disproportional to his single larceny conviction when compared to the value of the paving material that he stole from the highway department. The record does not contain reliable information concerning the value of the stolen paving materials. Flaherty advances an estimate of between $500 and $600. Even accepting a value of $500 to $600 for purposes of analysis, we reject Flaherty's proportionality challenge. An appellate court will "review the proportionality determination made by the [trial court] judge de novo . . . by drawing the constitutionally required comparison

between the magnitude of the forfeiture required by statute and the gravity of the triggering offenses." *Maher*, 452 Mass. at 523. See *Bajakajian*, 524 U.S. at 336-337. So viewed, the proportionality analysis under the Eighth Amendment does not turn on whether the monetary value of the pension forfeiture exceeds that of the stolen materials. "[A] penalty matching or exceeding any improper gain has greater deterrent value, and may be necessary and proper to enforce the law." *MacLean*, 432 Mass. at 349.

In evaluating the gravity of triggering offenses, courts "gauge the degree of [the member's] culpability and consider the harm caused by the underlying offenses." *Maher*, 452 Mass. at 523. In this case, in assessing Flaherty's degree of culpability, we rely on factors such as "the nature and circumstances of his offenses . . . [and] the maximum penalties authorized by the Legislature." *Ibid.* A felony conviction of larceny over $250 of public property is a serious offense. See G. L. c. 266, § 30. See also *Commonwealth* v. *Hudson*, 404 Mass. 282, 283 n.1 (1989). The circumstances demonstrate both the gravity of Flaherty's felony offense and his high degree of culpability.

Moreover, an aggravating factor is that Flaherty used the stolen paving materials in a side business he ran, which resulted in private gain by him. As noted, Flaherty stole resources from the very highway department that he supervised. And this was no solitary lapse in judgment. To the contrary, Flaherty effected his larceny over the course of three years, with continuing, separate acts of theft. That Flaherty acted in concert with his son, who was under his official supervision, also enhances the gravity of the offense. All of these factors add to Flaherty's culpability while undermining his disproportionality argument.

As the District Court judge stated, "Flaherty's actions undermine the public's confidence in the integrity and honesty of all public servants. Running a criminal enterprise with his son by stealing material that he has control over as superintendent of the highway department is about as confidence shattering as can be imagined." "[T]he potential harm to the public trust . . . [is] as equally important to our analysis as any potential harm . . . to the public fisc." *Maher*, 452 Mass. at 525.

For these reasons, we conclude that the forfeiture of Flaherty's

pension was not excessive, was not grossly disproportional to the gravity of his crime, and does not fall within Eighth Amendment proscriptions.

3. *Reimbursement of excess pension funds.* Flaherty next challenges the Superior Court judge's order that he repay the $64,008.02 he received in excess of his actual pension contributions. The crux of Flaherty's argument is that the Legislature's use of the phrase, "after final conviction," in G. L. c. 32, § 15(4), entitles him to retain any pension monies paid to him until his conviction became final on June 2, 2009. Flaherty's theory would entitle him to keep pension payments disbursed to him after the discovery of his thefts and during the ensuing criminal investigation and prosecution. The practical effect of Flaherty's interpretation would be to bestow upon Flaherty a windfall of $64,008.02 beyond what he paid into the pension system. Had the Legislature envisioned this type of exception in the forfeiture statute, it could have so stated in G. L. c. 32, § 15(4). Courts do not "read into the statute a provision which the Legislature did not see fit to put there." *General Elec. Co.* v. *Department of Envtl. Protection*, 429 Mass. 798, 803 (1999), quoting from *King* v. *Viscoloid Co.*, 219 Mass. 420, 425 (1914).

4. *Conclusion.* Based on the foregoing, we affirm the Superior Court judge's decision (1) that the forfeiture of Flaherty's pension did not violate the Eighth Amendment and (2) that Flaherty repay all pension funds received in excess of his original contributions.

*So ordered.*