BISIGNANI vs. JUSTICES OF THE LYNN DIVISION OF THE DISTRICT COURT DEPARTMENT OF THE TRIAL COURT, 100 Mass. App. Ct. 618

 
 ANDREW BISIGNANI vs. JUSTICES OF THE LYNN DIVISION OF THE DISTRICT COURT DEPARTMENT OF THE TRIAL COURT & another. [Note 1]

100 Mass. App. Ct. 618
 November 9, 2021 - January 14, 2022

Court Below: Superior Court, Essex County
Present: Blake, Massing, & Ditkoff, JJ.

 

Public Employment, Forfeiture of pension. Constitutional Law, Excessive fines clause. Municipal Corporations, Pensions. Pension.

This court concluded that the forfeiture, pursuant to G. L. c. 32, § 15 (4), of the entire amount of a public employee's pension, having a present value as of the date of the forfeiture of approximately $1.5 million, although substantial, was not so grossly disproportionate to the gravity of his offenses and the degree of his culpability as to violate the excessive fines clause of the Eighth Amendment to the United States Constitution as applied to him, in that he conceded that there was a direct connection between his crimes (he pleaded guilty to twelve crimes, eight of which carried the penalty of forfeiture) and his public employee duties; his crimes led to the commission of additional crimes (he committed four more crimes in an effort to cover up his felonious behavior and to obstruct the interests of justice); he faced an aggregate maximum sentence of fifty-four years in State prison and $102,500 in fines on the twelve counts of which he was convicted, penalties that reflected the significant gravity and seriousness with which the Legislature viewed those crimes; and his crimes involved a significant breach of the public trust striking at the core of the ethical responsibilities of his positions and created a substantial risk of harm and of adverse effects on the public fisc, and his decision to interfere with the criminal investigation and the grand jury proceedings caused harm to the towns that employed him by creating additional investigative costs [621-626]; further, this court noted that although the Legislature, in response to a decision of the Supreme Judicial Court, convened a special commission on pension forfeitures for the purpose of making recommendations about possible changes to the all-or-nothing approach in the current forfeiture statute, and despite that commission having filed its report and having recommended a substantial overhaul of the forfeiture provisions and process, the bill that was filed never became law [627-628].

 Page 619 

CIVIL ACTION commenced in the Superior Court Department on November 29, 2018.

The case was heard by Kathleen M. McCarthy, J., on motions for judgment on the pleadings.

Robert J. Cordy (Annabel Rodriguez also present) for the plaintiff.

David R. Marks, Assistant Attorney General, for Justices of the Lynn Division of the District Court Department of the Trial Court.

 BLAKE, J. After more than thirty-four years of employment as either a State or a municipal employee, the plaintiff, Andrew Bisignani, pleaded guilty to numerous crimes relating to his role as the town manager for the town of Saugus (Saugus) and the town administrator for the town of Nahant (Nahant). Thereafter, the retirement board of Saugus (board) voted to forfeit his entire retirement allowance pursuant to G. L. c. 32, § 15 (4) (§ 15 [4]). [Note 2] The question presented in this appeal is whether the forfeiture of Bisignani's substantial retirement allowance - the largest amount to our knowledge forfeited by a public employee to date - constitutes an excessive fine in violation of the Eighth Amendment to the United States Constitution. In the circumstances of this case, we conclude that the forfeiture of the entire amount of his retirement allowance required by the statute, as applied to Bisignani, was within constitutional limits. Accordingly, we affirm the judgment of the Superior Court.

Background. Beginning in 1965, Bisignani was employed as either a State or municipal employee. Bisignani worked for the Commonwealth from 1965 to 1967. He was the purchasing agent and city auditor for the city of Revere from 1978 to 2003, and he then served as the Saugus town manager from January 2003 to February 1, 2012. Thereafter, Bisignani retired. In total, he had thirty-four years and seven months of creditable service at the time of his retirement. See G. L. c. 32, § 4. Bisignani's application

 Page 620 

 for superannuation retirement was allowed; on January 29, 2012, he began receiving $6,425 per month, his "option C" retirement allowance. [Note 3] Almost immediately, Bisignani commenced part-time employment as the temporary town administrator of Nahant, a position from which he resigned in June 2014. [Note 4] See G. L. c. 32, § 91.

Following the return of a twelve-count indictment in December 2014 related to his service in the towns of Saugus and Nahant, Bisignani pleaded guilty to all charges, including procurement fraud, evading public bidding laws, incurring liability and expenditure of public funds violations, and interfering with the criminal and grand jury investigations underlying the charges related to his official duties. [Note 5] He was sentenced to two years of probation, with certain conditions, and a $60,000 fine. No restitution order was imposed. The board then held an administrative hearing; although Bisignani had the burden of proving the excessiveness of any forfeiture order, he and his wife elected not to appear at the hearing. Instead, his attorney appeared and argued on his behalf. The board made a finding that of the twelve convictions, eight were for crimes "directly implicat[ing] a public employee's official duties" pursuant to § 15 (4). A majority of the board voted to forfeit Bisignani's entire retirement allowance, excepting the return of his total accumulated deductions pursuant to § 15 (4). [Note 6]

Bisignani sought review of the board's decision in the District

 Page 621 

 Court pursuant to G. L. c. 32, § 16 (3) (a). He admitted that his crimes were "applicable" to the positions he held in Saugus and Nahant, but he claimed that the forfeiture, as applied to him, violated the excessive fines clause of the Eighth Amendment. Neither Bisignani nor his wife testified; nor did Bisignani present evidence of his personal finances to the District Court judge as permitted by G. L. c. 32, § 16 (3) (a). [Note 7] See Public Employee Retirement Admin. Comm'n v. Bettencourt, 474 Mass. 60, 72 (2016) (Bettencourt). The judge found that Bisignani failed to meet his burden to demonstrate that the forfeiture was grossly disproportionate to the gravity of his crimes. Accordingly, the judge entered a judgment upholding the board's decision.

Bisignani then filed a petition for certiorari in the Superior Court pursuant to G. L. c. 249, § 4. On cross motions for judgment on the pleadings, a Superior Court judge found that the District Court judge's decision was supported by substantial evidence and reflected a correct application of the law. She allowed the defendant's motion for judgment on the pleadings. This appeal followed.

Discussion. Bisignani does not contest that his convictions involved violations of laws "applicable to his office or position" within the meaning of § 15 (4) and therefore triggered imposition of the statutory forfeiture provisions. Rather, he claims that the application of § 15 (4) to him, by forfeiture of his pension, was constitutionally infirm. We review the District Court judge's determination of the proportionality of the forfeiture de novo. See Bettencourt, 474 Mass. at 71-72. Where, as here, the District Court judge made findings of fact, they must "be accepted unless clearly erroneous." Id. at 72 n.19. However, we accord no special weight to the Superior Court judge's decision. See Doe v. Superintendent of Schs. of Stoughton, 437 Mass. 1, 5 & n.6 (2002). "As the party challenging the constitutionality of the forfeiture, [Bisignani] bears the burden of demonstrating that the forfeiture is excessive." Bettencourt, supra at 72.

1. Proportionality of forfeiture. In United States v. Bajakajian, 524 U.S. 321, 327 (1998), the United States Supreme Court first applied the excessive fines clause of the Eighth Amendment 

 Page 622 

approximately two hundred years after its ratification. [Note 8] The Court articulated a standard for determining whether a fine is excessive, holding that "a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." Id. at 334. The Supreme Judicial Court subsequently concluded that a pension forfeiture under § 15 (4) is a fine for Eighth Amendment purposes subject to the rule of proportionality. See Bettencourt, 474 Mass. at 61, 71-72.

a. Amount of pension forfeiture. The first step in the proportionality analysis is to establish the amount of the pension forfeiture. See Bettencourt, 474 Mass. at 72. Here, Bisignani presented evidence from an actuary that the net present value of his retirement allowance was $1,533,698, exclusive of health care benefits and life insurance. The board did not retain an actuary, but asserted that the value of the pension was in the range of $1 million to $1.5 million. The District Court judge found that the present value of the future pension benefits as of the date of forfeiture, exclusive of the loss of health and life insurance benefits, was $1,533,698. [Note 9] Bisignani received all of the money that he paid in to the retirement system, but he forfeited his expectation of the public funds he would receive upon retirement ($1,533,689; see note 9, supra). As Bisignani points out, this amount far exceeds the value of other retirement allowance forfeitures upheld by our courts. See, e.g., State Bd. of Retirement v. Finneran, 476 Mass. 714, 723-724 (2017) ($433,400); Maher v. Retirement Bd. of Quincy, 452 Mass. 517, 523-525 (2008), cert. denied, 556 U.S. 1166 (2009) ($576,000); MacLean v. State Bd. of Retirement, 432 Mass. 339, 347-350 (2000) ($625,000); Flaherty v. Justices of the Haverhill Div. of the Dist. Court Dep't [623]of the Trial Court, 83 Mass. App. Ct. 120, 123-125, cert. denied, 571 U.S. 889 (2013) ($940,000), overruled in part on other grounds by DiMasi v. State Bd. of Retirement, 474 Mass. 194, 204 n.13 (2016). Cf. Bettencourt, 474 Mass. at 72-75 ($659,000 excessive).

b. Gravity of underlying offenses. The second step in the proportionality analysis is to assess "the gravity of the underlying offenses ... [and] to gauge the degree of [Bisignani]'s culpability." Bettencourt, 474 Mass. at 72. Four factors are relevant to this inquiry: "the nature and circumstances of [the] offenses, whether they were related to any other illegal activities, the aggregate maximum sentence that could have been imposed, and the harm resulting from them." Id. Each case turns on its unique facts. See id. at 75 n.25. Although we agree that the amount of the forfeiture is substantial, so too is the gravity of Bisignani's offenses and the degree of his culpability.

i. Nature and circumstance of offenses. Bisignani does not challenge the application of § 15 (4), as he concedes that there was a direct connection between his crimes and his public employee duties. Indeed, forfeiture under the statute would have been required by one conviction; here, Bisignani pleaded guilty to twelve crimes, eight of which carried the penalty of forfeiture. This was "no solitary lapse in judgment" by Bisignani. Flaherty, 83 Mass. App. Ct. at 124. The criminal acts that led to his convictions spanned five and one-half years and occurred in two separate municipalities. Compare MacLean, 432 Mass. at 341 & n.4, 349-350 (public employee engaged in multiple illegal activities over approximately seven- to nine-year period); Flaherty, supra (superintendent of city highway department committed separate acts of theft over three-year period). Bisignani's breaches of his ethical and legal obligations are far more serious than the unauthorized review of promotional examination scores that the court described as "snooping" in Bettencourt. See Bettencourt, 474 Mass. at 73. See generally G. L. c. 268A (governing conduct of public officials and employees). Indeed, Bisignani's crimes are more comparable to those of Finneran and DiMasi, high level public employees who were convicted of obstruction of justice, and multiple counts of devising a scheme to deprive the public of its right to honest services, respectively. See Finneran, 476 Mass. at 717-718; DiMasi, 474 Mass. at 196-197 nn.4 & 6.

ii. Other illegal activities. While on this record there is no evidence that the eight convictions linked to Bisignani's office 

 Page 624 

 were "related to" any other contemporaneous illegal activities, Bettencourt, 474 Mass. at 72, they led to the commission of additional crimes. [Note 10] Facing a criminal investigation and grand jury proceedings, Bisignani committed four more crimes in an effort to cover up his felonious behavior, and to obstruct the interests of justice. These crimes included altering municipal documents and illegally recording a conversation with a Nahant selectperson. In addition, as reflected on the docket of his criminal case, Bisignani's home confinement was to begin when his Federal probation was scheduled to end. Although the record is silent as to the details, this is evidence that Bisignani was involved in other illegal activities. Contrast Bettencourt, supra at 73 (no prior criminal record and nothing to suggest engagement in other criminal or illegal misconduct).

iii. Aggregate maximum sentence. Bisignani faced an aggregate maximum sentence of fifty-four years in State prison and $102,500 in fines on the twelve counts of which he was convicted. [Note 11] These penalties reflect the significant gravity and seriousness with which the Legislature viewed these crimes. Indeed, convictions of crimes with much lower aggregate maximum penalties have been deemed serious and grave in the pension forfeiture context. See, e.g., Finneran, 476 Mass. at 724 (ten years' imprisonment, $250,000 fine, three years' supervised release, five years of probation, and $100 special assessment); Maher, 452 Mass. at 524 (seventeen and one-half years of imprisonment); MacLean, 432 Mass. at 341, 348 (four years and $6,000 fine). Here, the maximum aggregate penalties indicate a substantial level of culpability. Cf. Bettencourt, 474 Mass. at 73-74 (where maximum punishment for violation of G. L. c. 266, § 120F, a misdemeanor, was imprisonment for thirty days and fine of not more than $1,000, court concluded that Bettencourt's aggregated maximum penalty for convictions of twenty-one counts - 630 days in a house of correction and a $21,000 fine - did not "indicate a substantial level of culpability").

 Page 625 

 iv. Resultant harm. On this record, there was no showing whether there was any pecuniary gain or benefit to Bisignani and his wife. However, harm is not limited to the pecuniary gain that Bisignani may have received, and thus we reject his contention that his offenses "inflicted minimal harm." Contrast Bajakajian, 524 U.S. at 339 (respondent convicted of failing to report transportation of currency outside United States caused minimal harm and no loss to public fisc); Bettencourt, 474 Mass. at 74-75 (no improper or illegal gain).

Here, Bisignani's crimes involved a significant breach of the public trust, striking at the core of the ethical responsibilities of his positions. Bisignani's decision to interfere with the criminal investigation and the grand jury proceedings caused harm to the towns by creating additional investigative costs. See United States v. Sperrazza, 804 F.3d 1113, 1128 (11th Cir. 2015), cert. denied, 579 U.S. 902 (2016) (cost of investigation and increased difficulty in investigating and prosecuting crimes properly considered in proportionality analysis). Bisignani's crimes also created a substantial risk of harm and of adverse effects on the public fisc. Most of the procurement law (see G. L. c. 266, § 67A) and the competitive bidding law (see G. L. c. 149, §§ 44A et seq.) violations concerned public building repairs and construction projects. These laws were enacted to ensure fair costs, professionalism, and accountability in public contracts. See St. 1980, c. 579, preamble. Here, because of Bisignani's actions, the towns of Saugus and Nahant were deprived of the benefits of the competitive bidding process. See Interstate Eng'g Corp. v. Fitchburg, 367 Mass. 751, 757 (1975) (competitive bidding statute, G. L. c. 149, §§ 44A-44L, "enables the public contracting authority to obtain the lowest price for its work that competition among responsible contractors can secure"). Potential harm to the public fisc - for two municipalities - was thus at least "threatened" by Bisignani's crimes. Contrast Bettencourt, 474 Mass. at 74. Additionally, Bisignani's crimes had the potential to allow work to be performed by contractors who did not meet minimum statutory requirements. See John T. Callahan & Sons v. Malden, 430 Mass. 124, 127-128 (1999), quoting G. L. c. 149, § 44A (2), (contracts may be awarded only to "the lowest responsible and eligible general bidder on the basis of competitive bids"). [Note 12]

 Page 626 

 As the town manager of Saugus and the town administrator of Nahant, Bisignani was responsible for overseeing all town operations and for managing all town buildings and property. See Blaser v. Town Manager of Methuen, 19 Mass. App. Ct. 727, 731 (1985) (listing authority and duties of town manager under home rule charter). As the town purchasing agent and chief procurement officer, Bisignani was responsible for upholding and complying with the public bidding and procurement laws. See G. L. c. 30B, § 2. Not only was Bisignani derelict in carrying out his duties, but he also tried to cover up his crimes, further eroding the public's trust. See Annese Elec. Servs., Inc. v. Newton, 431 Mass. 763, 767 (2000), quoting John T. Callahan & Sons, 430 Mass. at 128 (competitive bidding statute "places all general contractors and subbidders on an equal footing in the competition to gain the contract"); Interstate Eng'g Corp., 367 Mass. at 758 (competitive bidding procedure "facilitates the elimination of favoritism and corruption as factors in the awarding of public contracts and emphasizes the part which efficient, low-cost operation should play in winning public contracts"). Bisignani's actions undermined the respect for government service, one of the basic purposes of § 15 (4). See MacLean, 432 Mass. at 351. See also DiMasi, 474 Mass. at 196 ("forfeiture is intended to deter misconduct by public employees, protect the public fisc, and preserve respect for government service").

For all of these reasons, we conclude that the forfeiture of Bisignani's pension was not so grossly disproportionate to the gravity of his offenses as to violate the excessive fines clause of the Eighth Amendment as applied to him. [Note 13]

 Page 627 

 2. Legislative change. Bettencourt is the first case in which the Supreme Judicial Court held that the total forfeiture of a public employee's pension pursuant to § 15 (4) violated the excessive fines clause of the Eighth Amendment. See Bettencourt, 474 Mass. at 77. In recognizing the possibility that the total forfeiture could violate the excessive fines clause of the Eighth Amendment, the court observed that "it is likely within the court's authority to determine a level or amount of forfeiture or fine that would be constitutionally permissible." Id. at 76. Noting the policy considerations, however, the court did not act and deferred to the Legislature the opportunity to consider what should occur if an excessiveness determination is made. Id. at 77-79. In response to Bettencourt, the Legislature convened a special commission on pension forfeitures for the purpose of making recommendations about possible changes to § 15 (4). See St. 2016, c. 133, § 151. [Note 14] The commission filed its report and recommended a substantial overhaul of the forfeiture provisions and process, including a recommendation to abandon the all-or-nothing approach in the current forfeiture statute. See Report of the Special Commission on Pension Forfeiture (May 18, 2017) (report). [Note 15] Legislation was filed; however, the bill never became law. Accordingly, as Bisignani acknowledges, we must apply § 15 (4)'s 

 Page 628 

 "all or nothing" approach to his circumstances. See Gerber v. Worcester, 1 Mass. App. Ct. 811, 812 (1973).

Conclusion. Because we conclude that the pension forfeiture as applied to Bisignani did not violate the excessive fines clause, we affirm the judgment of the Superior Court. Bisignani's request for attorney's fees and costs is denied. [Note 16]

Judgment affirmed.

FOOTNOTES
[Note 1] Retirement Board of Saugus. The retirement board has not filed a brief or otherwise participated in this appeal. We shall refer to the Justices of the Lynn Division of the District Court Department of the Trial Court in this opinion as the defendant. 

[Note 2] General Laws c. 32, § 15 (4), provides: 

"In no event shall any member [of a retirement system] after final conviction of a criminal offense involving violation of the laws applicable to his office or position, be entitled to receive a retirement allowance[,] ... nor shall any beneficiary be entitled to receive any benefits ... on account of such member. The said member or his beneficiary shall receive ... a return of his accumulated total deductions [without added interest]."

We refer to "members" of a public employee retirement system as "public employees." See Public Employee Retirement Admin. Comm'n v. Bettencourt, 474 Mass. 60, 61 n.1 (2016).

[Note 3] This option provided Bisignani with a lower monthly allowance than the other available options but guaranteed an allowance to his wife, if he predeceased her. See G. L. c. 32, § 12 (2) (c). His wife is significantly younger than him. 

[Note 4] Bisignani was ineligible to contribute to the Essex regional retirement board in this position. He makes no argument that his crimes related to his temporary position as the Nahant town administrator should be considered differently from his crimes related to his employment as the Saugus town manager. 

[Note 5] Specifically, eight convictions involved "violation of the laws applicable to [Bisignani's] office or position" within the meaning of § 15 (4): four counts of purchasing violations under G. L. c. 266, § 67A; two counts of failure to advertise for public works bidding in violation of G. L. c. 149, § 44J; and two counts of finance violations by a municipal officer under G. L. c. 44, § 62. The other four convictions related to Bisignani's attempts to undermine the criminal investigation and the grand jury proceedings: concealing evidence from criminal proceedings in violation of G. L. c. 268, § 13E (b); witness intimidation in violation of G. L. c. 268, § 13B; altering public records in violation of G. L. c. 66, § 15; and unlawful wiretapping in violation of G. L. c. 272, § 99 C 1. 

[Note 6] Although Bisignani raised the Eighth Amendment issue before the board, the board correctly concluded that it lacked jurisdiction to decide the constitutional question. See Maher v. Justices of the Quincy Div. of the Dist. Court Dep't of the Trial Court, 67 Mass. App. Ct. 612, 618-619 (2006), S.C., 452 Mass. 517 (2008), cert. denied, 556 U.S. 1166 (2009). 

[Note 7] General Laws c. 32, § 16 (3) (a), states that the District Court "shall review [the board's] action and decision, hear any and all evidence and determine whether such action was justified. ... The decision of the court shall be final." 

[Note 8] The Eighth Amendment states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Eighth Amendment is applicable to the States through the due process clause of the Fourteenth Amendment to the United States Constitution. See Timbs v. Indiana, 139 S. Ct. 682, 687 (2019); Maher, 452 Mass. at 522, and cases cited. 

[Note 9] From that dollar value, the judge deducted $151,299.03, the amount of Bisignani's accumulated retirement annuity savings account contributions. Under § 15 (4), these contributions must be returned to Bisignani and were not subject to forfeiture. Therefore, according to the judge's calculations, the total loss was $1,382,399.07. Bisignani argues that reducing the monetary loss by the accumulated contributions was error, because the contributions were not actually returned in light of the retirement benefits he had already received. Adjusting for a minor transcription error, we assume without deciding that the monetary loss was $1,533,689. No other issue about the deductions is properly before us in this limited review. 

[Note 10] Most of Bisignani's convictions are felonies, which are generally deemed "serious in nature." Maher, 452 Mass. at 523-524. Even a conviction of a misdemeanor may be deemed a serious enough offense to support forfeiture. See MacLean, 432 Mass. at 341, 348, as explained in Bettencourt, 474 Mass. at 74 n.24 (two misdemeanor convictions carrying maximum fine of $6,000 and four years' imprisonment) 

[Note 11] Bisignani's actual sentence is not a factor in the proportionality analysis. See Bettencourt, 474 Mass. at 74 n.23 (court declined to consider "relative leniency of the sentence ... as opposed to other potential violators"). 

[Note 12] General Laws c. 149, § 44A (1), defines "responsible" as "demonstrably possessing the skill, ability and integrity necessary to faithfully perform the work called for by a particular contract, based upon a determination of competent workmanship and financial soundness." The statutory definition of "eligible" excludes those "debarred from bidding" under any applicable law and requires the contractor to certify that it can "furnish labor that can work in harmony with all other elements of labor employed or to be employed on the work." See Fordyce v. Hanover, 457 Mass. 248, 259-261 (2010) (discussing complicated procedure and criteria necessary to meet statutory requirement that all public construction contracts be awarded to the "lowest responsible and eligible bidder"). 

[Note 13] As Bisignani did not present evidence of his personal finances to the board or to the District Court judge, the record does not permit us to evaluate Bisignani's claims about the impact of the forfeiture on his family and livelihood. Bisignani's age (he was seventy-one years old at the time of the hearing before the board) and significant years of service, common traits of many retired public employees, do not prove that the forfeiture "after the conclusion of his career" will deprive him of his livelihood. To the extent that Bisignani complains about the unfairness of the forfeiture to his wife, the Legislature has directly addressed this point in § 15 (4) ("In no event shall ... any beneficiary be entitled to receive any benefits ... on account of such member"). Bisignani also points to the opinion of an individual board member who said that the fine was "excessive," "stupid," and "asinine." This argument is unavailing, as "[i]t is for the courts, not administrative agencies, to decide the constitutionality of statutes." Maher, 67 Mass. App. Ct. at 619. 

[Note 14] Section 151 of c. 133 of the Acts of 2016 states in pertinent part: 

"There shall be a special commission on pension forfeiture to review the decision of the Supreme Judicial Court in Public Employee Retirement Administration Commission v. Edward A. Bettencourt, 474 Mass. 60 (2016). ... The special commission shall make recommendations, including proposed amendments to section 15 of chapter 32 of the General Laws. The special commission shall file its recommendations, including any proposed legislation, with the clerks of the senate and house of representatives."

[Note 15] The special commission recommended, among other things, the implementation of a tiered pension forfeiture system, the prohibition of forfeiture based on misdemeanor convictions, protection from forfeiture for innocent spouses, and moving jurisdiction of forfeiture appeals from the District Court to the Superior Court. See report at 6-14. 

[Note 16] The defendant's request to supplement the appellate record with certified copies of a fifty-nine page response by the Commonwealth to Bisignani's request for a bill of particulars and a 181-page application for a search warrant is denied. Our review is generally confined to the record from the court being reviewed. See Bettencourt, 474 Mass. at 61 n.3. None of these documents was submitted to the board or the District Court judge, and the Superior Court judge denied a similar request for failure to comply with rule 9A of the Rules of the Superior Court. Moreover, unlike a transcript of a plea colloquy (which the board was unable to obtain in this case), the documents that the defendant seeks to add to the record contain no admissions by Bisignani. See Nantucket v. Beinecke, 379 Mass. 345, 352 (1979) (appropriate to take judicial notice of matter only if "indisputably true"). See also Mass. G. Evid. § 201 (2021). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.